### CITY OF VICTORIA v. VICTORIA COUNTY.

#### No. 1606.   Decided April 3, 1907.

**1.—Municipal Government—Change of System—Succession to Property Rights.**

Upon a change of the Spanish system of municipal government, substituting a county and town government for the municipality of Victoria which embraced one and parts of several other counties, the succession to the rights held by the old municipality, in property held for public purposes, as public squares in the town, was for the legislative power to determine.   (P. 451.)

**2.—Same—Public Square—City or County.**

Reviewing the colonization laws of Coahuila and Texas, and the subsequent legislation of the Republic of Texas affecting the title and right of control of the public square laid off in the municipality of Victoria, in 1827, "for the municipal buildings or town halls," held, that the Act of December 10, 1841 (2 Gam. Laws, 687), placed the title to such square in the town of Victoria for the use and benefit of its citizens, and that such act was within the power of Congress.   (Pp. 448–451.)

**3.—Same—Municipality—Legislative Control.**

Municipalities, whether counties or towns, are auxiliaries of the State, and may be divided, consolidated, etc., at the legislative discretion, and the common property and common burdens apportioned as seems equitable.   (P. 451.)

**4.—City Square—Dedication for Courthouse.**

Under the Acts of February 5, 1840 (2 Gam. Laws, 452), and of December 10, 1841 (2 Gam. Laws, 687), the city of Victoria was authorized to appropriate the public property in its charge to the erection of a courthouse, etc., for the county, and this authorized it to devote a portion of one of its public squares to a location for the county courthouse, etc.   (Pp. 451, 452.)

**5.—Same—Courthouse—Dedication of Public Square by City.**

Such appropriation of public ground for county buildings exhausted the power of dedication to the county conferred by the legislative authority, and extended only to the ground actually occupied by the buildings, and such additional space as was reasonably necessary for the purposes for which the buildings were erected, determined by the conditions existing when the act was passed and the buildings erected.   (P. 452.)

**6.—Same—Limitation.**

Such dual and permissive occupation of the premises by the county would not, it seems, support claim of limitation in its favor as to the entire square.   (P. 452.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Victoria County.

The city of Victoria sued the county to recover a portion of one of the public squares.   Defendant had judgment, and the city appealed and on affirmance obtained writ of error.

*J. L. Dupree,* city attorney, *Dupree & Pool, Withers & Dabney* and *Sam'l B. Dabney,* for plaintiff in error.—The evidence in this case shows that the town of Victoria had never parted with its title by adverse occupancy or otherwise, to all of this square and had continuous possession and control of a great portion thereof down to August, 1904, and the judgment of the court is contrary to the evidence.   Laws of

Coahuila and Texas, Instructions to Commissioners, p. 72, arts. 12, 13; Laws of the Republic of Texas, 1st Gam., p. 1379, Act December 14, 1837; p. 1499, Act May 24, 1838; 2d Gam., p. 118, Act January 26, 1839; p. 424, Act December 17, 1839; p. 450, Act February 5, 1840; p. 687, Act December 10, 1841.

The location of the courthouse and jail and the previous possessions of the county of the balance of the square show that of the western half of the square belongs to and is claimed by the town. Same authorities.

If the county is the successor of the municipality or colony, and if this square was dedicated to the uses of the whole of such colony, nevertheless its dedication was for buildings of a certain character and specifically excluded therefrom a jail, and impliedly excluded cesspools and other structures which the county has placed thereon. Instructions to Commissioners, Laws of Coahuila & Texas, art. 13, p. 72; City of Llano v. County of Llano, 5 Texas Civ. App., 137; County of Llano v. City of Llano, 9 Texas Civ. App., 378; County of Harris v. Taylor, 58 Texas, 690; Lamar County v. Clements, 49 Texas, 357; 13 Cyc. 502, 503.

It is the duty of the town to enforce the right uses of this property and it never had the power to consent to the uses to which defendant put it. Same authorities.

The Republic of Texas, as a sovereign of the soil, had the right to divert any previous dedication, if such there was, and to patent this square in trust for the uses of the town. Act December 10, 1841, 2d Gam., 687; Bass v. Fontleroy, 11 Texas, 700; East Hartford v. Hartford Bridge Co., 10 How., 532; Blair v. Odin, 3 Texas, p. 288.

The burden is upon the party claiming the dedication to clearly show the dedication and its extent, and though even the whole be tendered the use of part relieves the remainder of the dedication. 13 Cyc. of Law and Pro., 475; Hogue v. City of Albina, 10 L. R. A., 673, 20 Ore., 182; Kelsoe v. Town of Oglethorpe, 102 Am. St. Rep., 140, 120 Ga., 951; Carlinville v. Castle, 69 Am. St. Rep., 214, note L. 216, 177 Ill., 105; State v. Trask, 27 Am. Dec., 557, 558, 6 Vt., 355.

The Statute of Limitation for ten years could not run in favor of the defendant against the town after the passage of the Act of 1887, nor was the county claiming adversely if it asserted a dedication. Rev. Stats., art. 3351.

*Proctors, Vandenberge & Cram, J. L. Hill* and *T. R. Wood,* county attorney, for defendant in error.—The county of Victoria, and not the town of Victoria, or the present city of Victoria, is the successor of the municipality of Victoria, as known to the colonial system. General Rules and Regulations for Colonization, November 21, 1828, sec. 12; Decree No. 196, Coahuila and Texas, April 28, 1832, art. 1; Proceedings of Convention at Washington, 1 Gam. Laws, 47, sec. 6; Ordinances and Decrees of Provisional Government, 1 Gam. Laws, 14; Constitution of 1836, Republic of Texas, secs. 10, 11, 12, 1 Gam. Laws, 1074; Resolution of December 20, 1836; 1 Gam. Laws, 1209; Act of December 20, 1837, 1 Gam. Laws, 1239; Act of December 22, 1836, 1 Gam. Laws, 1258; Act of December 22, 1836, 1 Gam. Laws, 1276; Act of December 26, 1836, 1 Gam. Laws, 1284; Act of June 12, 1837, 1 Gam. Laws, 1320; Act of October 26, 1837, 1 Gam. Laws, 1348;

Act of October 31, 1837, 1 Gam. Laws, 1352; Act of December 14, 1837, 1 Gam. Laws, 1337. As a matter of fact, there never has been any act at all of the Legislature of Texas creating the county of Victoria, but Victoria, like practically all of the old municipalities, insensibly merged into a county. On December 29, 1837 (1 Gam., 1463), there is an Act defining the boundaries of the county of Jackson, and in this Act appears a reference to the boundaries of the county of Victoria. Not until March 31, 1846, were the boundaries of the county of Victoria ever defined by any law of Texas (1st Gam., 1341). There is, and can be, no question whatever that county was simply the English term substituted for the Spanish term municipality. Therefore, if the square in question in this suit was created as a site for buildings of the municipality of Victoria, it today exists as a site for buildings of the county of Victoria.

The particular square in question was designed as a site for public houses of assemblage for the inhabitants of the municipality of Victoria, and was, therefore, a square intended as a site for buildings of the municipality. It was never in anywise intended as a site for purely urban edifices, even though public in their nature.

Both of the Acts incorporating the old town of Victoria expressly imposed upon this town the construction and maintenance of both a jail and courthouse for the county of Victoria, and conveyed public lands to the town, to be sold for the purpose of erecting such very buildings. Act of December 14, 1837, sec. 8; Act of May 24, 1838, 1 Gam. Laws, 1499; Act of December 17, 1839; Act of February 5, 1840, sec. 9, 2 Gam. Laws, 452.

The charter obligations imposed upon the town of Victoria to construct and maintain a courthouse and jail for the county of Victoria, necessarily involved the selection by the town authorities of a site for such structures.

Unquestionably this square was the only one of the public squares, under the old colonial plan of the town, upon which said town authorities could properly locate a courthouse for the municipality or county, and there being in the particular instance of the town of Victoria a failure to lay out a separate jail square, this square in question was also the most appropriate, and, indeed, the only, square upon which to place the latter structure.

The Act of December 10, 1841, confirming to the town of Victoria the four league town grant, and under which Act the patent issued to the town, by section 3 of said Act, expressly subordinated said grant to all the obligations and duties resting on the town of Victoria under its charter, and thereby clearly showed an intention on the part of Congress not to in anywise alter the status of said Municipal Square as known to the colonial law. This intention on the part of Congress, in the grant of the four leagues, to not in anywise alter the status of the colonial public squares upon the four leagues grant, is made yet plainer by section 3 of the Act of January 26, 1839.

In view of the distinct inhibition in said Act of 1839 as to "the cutting, altering or changing any public square in the town," it follows that when, in 1840, the town authorities erected a county jail upon this square, and in 1849 a county courthouse, no portion of this square could

have been intended by them to be cut off for the use of the town proper, and composite county and city buildings were obviously not contemplated by the Charter Acts of Victoria, and are now in effect prohibited.

If this square belongs to the city of Victoria, it is by law devoted to the sole use of a town hall, and the city already has one city hall, situate on another square, and can not in law have or provide another town hall, and, therefore, any such city use of said property is an impossibility, and has wholly become extinguished by the act of the city itself, the cy pres doctrine being hardly applicable.

The claim of the town of Victoria or the present city of Victoria to any portion of this public square is conclusively barred by the ten years statute of limitations, inasmuch as the record in this case shows, that from 1859 down to the erection of the new courthouse at Victoria in 1892, a period of thirty-three years, and a period of over twenty-seven years prior to the Act of 1887, exempting public grounds of a town from the operation of the statute of limitations, the county of Victoria had this entire square enclosed by a substantial fence, and exercised exclusive dominion over the entire surface of said square.

The Act of December 10, 1841, confirming the four leagues grant to the corporation of Victoria, never could have had any greater effect, so far as this square was concerned, than to place the naked legal title to this square in the town of Victoria, the entire beneficial use being in the municipality or county of Victoria.

There is no possible legal ground for such a division of this square between the city and county, and any division is expressly inhibited by the original town charter of Victoria under which the appellant asserts all its rights in this case. The square either belongs to the city of Victoria wholly or to the county of Victoria wholly.

GAINES, CHIEF JUSTICE.—This was an action by the city of Victoria to recover of Victoria County a certain public square in the city, except a portion of the southeast corner thereof, upon which is situate the county courthouse, and to cause the removal of certain structures and cesspools constructed by the county. The county pleaded not guilty, the general issue, the statutes of limitations as well as other pleas not necessary to mention. The issues of fact and law are shown by the conclusions of the trial judge, which we here copy:

"CONCLUSIONS OF FACT.

"1. That in 1824 a grant was attempted to be made by the Government of Coahuila and Texas to Martin De Leon of four leagues of land for a town settlement of Victoria. This town settlement afterwards constituted the town of Victoria, and was the town of De Leon's Colony.

"2. This town was laid out by Fernando De Leon, Commissioner for Titles in De Leon's Colony, some time after September 24, 1827, and was laid out in pursuance of the instructions of said date to Commissioner for Titles pursuant to the colonization law of Coahuila and Texas of 1825.

"3. Six hundred and forty acres of land were surveyed and divided into town lots and blocks and streets; the several squares were laid out by the Commissioner which were not divided into lots, and they were

Constitutional Square, in the central portion of the town, and an Ecclesiastical Square, lying east of Constitutional Square; this, Municipal Square, was laid out on the west, and a market square situated practically south of Constitutional Square, but with two blocks intervening, and a burial ground a little more than two squares in size in the eastern portion of the town. There were six church squares, scattered in different portions of the town tract, subsequently designated by the Town Council; and so far as there is any evidence to show, either by authorized maps of said town or otherwise, there was no jail or house of correction square designated or laid out by said Commissioner or other authority, on said town tract of Victoria or elsewhere in De Leon's Colony.

"4. The town of Victoria consisted of four leagues, and at sometime subsequent to the laying out of said town proper by said Commissioner, the balance of said four leagues was subdivided into farm lots.

"5. The entire block of ground described in plaintiff's petition including the portion sued for by plaintiff, as well as that excepted in plaintiff's petition from this suit, constitutes a square of ground in the town of Victoria, now the city of Victoria, and the same was originally laid out and designated as the Square, known as Municipal Square, under said instructions to the Commissioner, being the square on the west of Constitutional Square in said town, and was designated for buildings for the municipality.

"6. The town of Victoria was incorporated by the Act of December 14, 1837, of the Republic of Texas; and by the eighth section of that Act the Town Council of Victoria, in conjunction with the justices of the County Court, were empowered and authorized to sell and alienate such public lots and lands as lay within their jurisdiction and to which there was no legal claimant or title, and to dispose of such houses or other buildings as might have been formerly the property of said town, and to apply the proceeds of such sales to the erection or repairs of a courthouse, jail and such other public edifices as were deemed fit, and to the erection and endowment of a school. By an Act of May 24, 1838, that portion of the Act of December 14, 1837, which required the Town Council to act in conjunction with the justices of the County Courts was repealed; but by an Act of December 17, 1839, this Act of May 24, 1838, was repealed, and the provision requiring the council to act in conjunction with the justices of the County Courts in the erection or repairs of the courthouse, jail and such other public edifices as may be deemed fit, and the maintenance of a public school, was expressly revived.

"7. By the Act of January 26, 1839, the Town Council of Victoria was prohibited from selling, changing, cutting or in any manner altering any street or public square previously laid off in said town.

"8. By the Act of February 5, 1840, the Act of December 14, 1837, incorporating the town of Victoria was repealed, and a new incorporation act was substituted therefor; by the terms of section 9 of which the Town Council of Victoria were directed to sell and alienate any portion of lands owned by the corporation, and 'to appropriate the proceeds thereof to the erection of a jail, courthouse and clerk's office, and the

·remainder of the proceeds of such sale were to be appropriated for the purpose of education within said town and for no other purpose,' and this act of incorporation of the town of Victoria was in force when said town adopted the provisions of the general incorporation laws of the State of Texas in 1879.

"9.  On December 10, 1841, the Congress of the Republic of Texas passed an Act to confirm the title to the town.  This Act confirms the original grant to Martin De Leon, and declares 'that the four leagues of land, or the part or parts thereof remaining unsold,' are acknowledged and declared to be the property of the present corporation of the town of Victoria, and their successors in office in trust forever, and for the use and benefit of the citizens of the town.  Section 3 of this Act required the corporation of the town of Victoria to do and perform every act or thing authorized by and under the present law of incorporation, which was the Act of February 5, 1840.

"10.  In the year 1840 or 1841, the Town Council of Victoria, in conjunction with the justices of the County Court, erected upon this Municipal Square a log jail, which was a two-story structure, and there is testimony that about 1845, or perhaps earlier, the sheriff of Victoria County had his office over said jail.  From the evidence this structure was known as the county jail, and the evidence in this case indicates that it was used as the county jail, and it was the first building placed upon this square, and it was located and erected on the southwest quarter of said Municipal Square.  The evidence shows that this building remained on this square until it became insecure as a jail, and was torn down, and the second jail was built where it now stands, on the western portion of this square in about the year 1852.

"11.  In the year 1849 the Town Council of Victoria built upon this Municipal Square a courthouse, which remained on said square until the year 1892, when it was replaced by the present courthouse of Victoria County.  This first courthouse was situated about upon the site of the present courthouse, but being a much smaller building did not occupy near so much space, and was situated in the southeastern portion of this Municipal Square.  This first courthouse, erected by the Town Council in 1849, was occupied, used, controlled and enjoyed by the county of Victoria, from the time of its erection to the time it was replaced by the present courthouse, but the city of Victoria occupied one of the upper rooms of same for a municipal hall until in February, 1850, when there was an agreement entered upon the minutes of the County Court wherein the city was given the use of the 'old brick building in the rear of the courthouse, known as the clerk's office, for the perpetual use and control of the said town of Victoria forever.'  After which the county was in sole possession, use and control of said first courthouse while it stood.

"12.  In the year 1852 the county of Victoria erected upon said Municipal Square a building for a privy, which was situated about or near the center of this square, which remained there until replaced by a brick privy in about the year 1865 or 1866; and it appears from the evidence that these privies were moved and rebuilt and kept on this square as long as the first courthouse, built by the town of Victoria in 1849, stood, and until they were replaced by the cesspools of the county

after the present courthouse was built, and the last of said privies were somewhere near the site of the old jail.

"13. About the year 1851 or 1852 the county of Victoria built, or caused to be built, a jail on this Municipal Square to replace the old jail. This jail was built under the direction and supervision of the county, and was used and controlled continuously and almost exclusively by the county of Victoria from the time of its erection in 1851 or 1852 until after the present jail of Victoria County was built in 1884, and thereafter from December, 1886, it was used by the city of Victoria under and by permission of the County Commissioners' Court of Victoria County, 'until the county needs same,' and upon application made by the City Council to the County Commissioners' Court for such permission, and the city used same until 1900, when the city hall was built by the city of Victoria upon Market Square. This old jail was a substantial building at the time it was built, being of brick, with iron cages, etc., and is still standing upon this Municipal Square in the place designated on the map attached, as an exhibit to plaintiff's petition and is situated on the western part of the block, a little south of the line through the center of said block from east to west.

"14. The brick building known as the 'clerk's office,' referred to above, was erected in about the year 1846, by the county of Victoria, and was situated on the south of a line drawn through the center of this Municipal Square from east to west. This building was used by the county of Victoria from about November, 1847, when it was finished, until it was transferred to the city in February, 1850, as hereinbefore stated, and was used and controlled exclusively by the city until about 1872 or 1873 when it became practically uninhabitable.

"15. At sometime prior to the Civil War, not later, I think, than about the year 1859, a substantial plank fence was built enclosing this entire Municipal Square. There is no evidence in this case as to who erected this fence; there is an order on the minutes of the Town Council appointing a committee to make plans and specifications for the erection of a fence around the public square and courthouse square, but said minutes do not show any subsequent order for the erection of the fence around courthouse square, and there is no report of the committee in the matter; said minutes do show orders for the building of a fence around the public square, and also payment therefor. The very numerous orders of the County Commissioners' Court of Victoria County made at various times show that the county, through its officers, controlled, maintained, used and constantly repaired said fence from sometime before the Civil War, probably as early as 1859, until the said fence was torn down in 1892, to facilitate the building of the present courthouse; and the evidence also shows that during this time, that the county controlled and maintained said fence, the county had trees planted on said Municipal Square, or, as it is designated upon the authorized maps of the town of Victoria, which have been offered in evidence, upon 'Courthouse' Square; at one time the county judge was given permission by the Commissioners' Court to plant and raise a garden on said square, and the evidence shows that he did so, and that his said garden was near the center of the square. It is also in evidence that the county sold hay cut off of this square at one time,

when said fence was around it, and also during that time the sheriffs of Victoria County and their deputies used said square to graze their horses, and excluded the stock of all other parties therefrom.

"16.   About the year 1893 the city built a barbed-wire fence around the western half of this square, which remained there until 1899, when it was torn down and removed by the county, and was never rebuilt by the city.   The city has also used portions of said square, at times, to place upon it gravel for the repairs of the streets of the city, and also sewer pipe, until the county removed same and put the present fence of posts and a chain through the tops of same, in the year 1904, since which time the county has been in actual exclusive possession and control of all of said square, except so much as is covered by the house of the hook and ladder fire company on the north or northwest corner thereof.

"17.   About the year 1859 the city built a city jail or lockup on this Municipal Square, which was a frame two-story building, situated to the north of the old jail, and remained upon that site until about the year 1869, when it was moved by the city across the square and located near the northern line of said square and fronting on Forest Street, not far from where the new jail of the county now stands.   The city held its meetings in the room over this city lockup for several years, until about 1884.   The evidence shows that this city lockup was torn down and removed from this square by the city in 1886 at the request of the county, after the new jail was built by the county.

"18.   At sometime about the year 1884 the Protection Fire Company No. 1, of the town of Victoria, one of the volunteer fire companies of the city, built a two-story frame building, by permission obtained from the county of Victoria, as evidenced by the minutes of the Commissioners' Court of Victoria County, on or near the southern line of the square, fronting on Constitutional Street of said city, and remained on that site until in the year 1886 it was destroyed by a cyclone; and was rebuilt and now stands on the northern corner of said Municipal Square. This building was erected by and under the supervision of the fire company, and was paid for partly by the fire company and from contributions from different fire companies over the country, and partly by the city; and meetings of the City Council were held in the upper story of said building from the time it was rebuilt in 1886 until the city built and moved into its new city hall on Market Square in the year 1900.

"19.   About the year 1884 the county built its present jail where it now stands on the eastern side of this square, as shown on the plat attached as an exhibit to plaintiff's petition, and provided a cesspool for same located as shown on said plat for the use of the jail.

"20.   In the year 1892 the county built its present courthouse, and provided a cesspool for same, at the point shown on the plat attached to plaintiff's petition, and the privies previously maintained by the county on this square, in connection with the old courthouse, were removed.

"21.   There is evidence tending to show that said cesspools have been offensive at times during damp weather, but there is no proof that shows that same were offensive at the time this suit was instituted nor at the trial of this cause, and these cesspools are shown to be necessary and

proper structures and conveniences for the use of said courthouse and jail, and I do not believe there is any necessity to abate same or enjoin their continuance at this time.

"2. The city of Victoria, in 1900, erected for itself on Market Square, a commodious and comfortable city hall building at a cost of somewhere about $7,000 or $8,000, which, the facts show, has ample accommodation for all of the city officers and for the transaction of the business of the city, in which building the city has its calaboose or lockup. The city has four or five firehouses scattered over the city, which appear, from the evidence, to be ample for the needs of the Fire Department.

"23. From all the facts in this case, I find, from the weight of the evidence, that while there has been at times a disagreement between the authorities of the county and the city about the occupation of some of the buildings upon different locations on this square, such disagreements dating back as early as 1850, yet I am of opinion that this entire square has been under the dominion and control of the county of Victoria almost continuously since the year 1840, and that now the county is in exclusive possession of the entire square and owns all the buildings thereon, except the building in the northern corner thereof owned by the fire company and the ground upon which this building is situated, which is in the possession at this time of the city.

"CONCLUSIONS OF LAW.

"1. I am of the opinion that the municipality of Guadalupe de Victoria comprised the entire colony of Martin De Leon, and that the county of Victoria is the lawful successor of said municipality of Victoria, and that this Municipal Square was originally intended and designed by the laws of Coahuila and Texas for the use, benefit and enjoyment of all of the citizens of the said municipality of Victoria, and not for any part thereof.

"2. I am further of the opinion that it was the duty of the town of Victoria, of which the city of Victoria is the successor, under the Act of its incorporation, to provide a courthouse, jail and clerk's office for the citizens of the county of Victoria, and necessarily to provide a suitable site for the location of such buildings; and that the Town Council had the right and authority to designate and dedicate this Municipal Square for the erection and maintenance of said buildings for the county, and the Council of the town of Victoria did so designate and dedicate said Municipal Square, and the same was an appropriate and proper square of said town upon which to locate and maintain such buildings.

"3. I am further of opinion that the county of Victoria, being entitled to the beneficial use of this square, and having had dominion and control of said Municipal Square since about the year 1840, and having been expressly charged, since about the year 1879, with the duty of maintaining said buildings located in different places on said square; and having cared for, maintained and repaired said buildings from the time of their erection, has the lawful right to the exclusive possession, management and control of all of said Municipal Square for the use, benefit and enjoyment of the citizens of the county of Victoria, except so much thereof as is covered by the building of the hook and ladder

fire company, to which portion of said square I am of the opinion the city has the right of possession for the use and benefit of said fire company.

"4. I am further of the opinion that, inasmuch as this Municipal Square was, by the direction of the proper authority, in the original survey and laying out of the town tract of Victoria, laid out and designated as a public square for the use and benefit of the general citizenship of the municipality of Victoria, of which the county of Victoria is the successor, and the law forbids the same to be sold, changed, cut or in any manner altered; neither the city nor the county of Victoria has or ever had any title to or any proprietary ownership in said Municipal Square, and that the only interest they or either of them have or could have in same is the right to hold possession of and manage and control same for the use, benefit and enjoyment of the said citizens of the county of Victoria, under such rules, regulations and restrictions as may be reasonably necessary for the preservation of same, and to protect the buildings there from injury or destruction. However, if I am in error in this position, and if in law there ever was any title in the city of Victoria to said square, I think same was a bare legal title, and that by reason of the designation and dedication by the Town Council of this square to the county of Victoria for a courthouse and jail square, which it had lawful authority to do; and the fact that the county of Victoria is in possession of the said square, and has been in such possession for a long time, exercising dominion and control thereof, and maintaining the several county buildings situated on different and various localities thereon, I am of the opinion that the county of Victoria holds the equitable title, and is entitled to the exclusive possession, management and control of all of said Municipal Square, for the use, benefit and enjoyment of all of the citizens of Victoria County, except that portion thereof which is occupied and covered by the building of the hook and ladder fire company, located on the northern corner thereof, of which I hold the city of Victoria should have the possession, management and control for the use and benefit of said fire company. And judgment will be rendered in this case in accordance with these conclusions and findings, that the plaintiff, the city of Victoria, take nothing by this suit, and that the defendant, the county of Victoria, be forever quieted in its exclusive possession, management and control of all of said Municipal Square, for the use, benefit and enjoyment of all of the citizens of the county of Victoria, except that portion occupied and covered by the building of the hook and ladder fire company, to which the possession of the city of Victoria for the use and benefit of the said fire company, be quieted.

"ADDITIONAL CONCLUSIONS OF FACT.

"1. In the year 1884 the city of Victoria erected a one-story frame building upon this square, near the first courthouse, and a portion of same was on the site covered by the rear portion of the present courthouse, and this building was occupied, owned and used by the city of Victoria for a council chamber where the City Council held their meetings. At the time of the erection of this building the county complained that the same was being erected too near the old courthouse, thus cutting off the light and breeze therefrom, and directed the county judge to

have instituted an injunction suit to restrain the erection of said building at the place that would cut off the light and breeze from said old courthouse, and also to remove certain inflammable articles out of the old clerk's office being used by the city; there is no evidence that any such suit was ever brought. Thereafter, about the year 1892, when the present courthouse was being built, or about to be built by the county, this building was removed and sold by the city at the request of the county in order to make room for the building of the present courthouse, in consideration of the agreement of the county that the city would be permitted to occupy and use one of the rooms in the present courthouse. After the courthouse was completed, the county declined to permit the city to occupy and use the room in the present courthouse, only for a limited number of years, and upon condition of the city furnishing same in a certain manner, which the city declined to do, and the county refused it the permission to use and occupy same under any other condition or circumstances, and the city then occupied and used the upper room of the building of the fire company on the northern corner of this Municipal Square, until it erected and occupied the city hall on Market Square about 1900.

"The finding of fact therein that the county agreed to permit the city to occupy a room in the new courthouse in consideration of the city agreeing to remove the room built by the city for a council room upon Municipal Square, at the time the new courthouse was erected; is based solely upon the oral testimony of three ex-aldermen of the city, and there is no record evidence either upon the minutes of the City Council or of the Commissioners' Court of the county showing such agreement. This oral testimony was admitted over the objection of defendant, and an exception reserved thereto by defendant.

"2. This Municipal Square upon which the first jail, courthouse and clerk's office were built, and upon which the county now has and maintains its present large and commodious courthouse, and jail, as well as the old jail, and the several cesspools, all of which occupy a large part of said square—more than one-half thereof—is about one hundred varas square in size, and I am of the opinion the entire square can be conveniently used by the county in maintaining said buildings and properly preserving the same."

There was a judgment for the defendant as indicated by the trial judge's conclusions of law, which upon appeal was affirmed by the Court of Civil Appeals.

In disposing of the case the first question to be determined in logical order is the effect of the Act of the Congress of Texas, approved December 10, 1841 (2 Gam. Laws, 687), upon the title to the square. This involves a history of the establishment of the town of Victoria and of the previous legislation with reference thereto, which we give succinctly, at the expense of repeating what is said in the findings of the trial judge.

Under the colonization law of Coahuila and Texas, Victoria was established as the seat of the municipal government of Martin De Leon's Colony. In accordance with the law and the practice prevailing at that time there were laid off for public purposes, specifically defined, sundry

public squares, among which was "Constitutional Square," and to the west of it, the square in controversy. Articles 12 and 13 of the "Instructions to which the Commissioner for the distribution of lands to the new colonists who present themselves to settle in the State [Coahuila and Texas] according to the colonization law of March 24, 1825," provided that: Art. 12. "The site destined for the new town having been determined, he shall see that the principal lines run north and south, east and west: he shall designate a square measuring one hundred and twenty varas on each side, exclusive of the streets, to be called the Principal or Constitutional Square. This shall be the central point from which the streets shall run for forming squares or blocks thereon agreeably to the accompanying plan." Art. 13. "The block fronting the principal square, upon the east side, shall be destined for a church, curate's dwelling, and other ecclesiastical edifices; and that on the west, for municipal buildings or town halls. In another suitable place, he shall point out a block for a market square, one for a jail and house of correction, one for a school and other buildings for public instruction, and without the limits of the town for a burial ground." (1 Gam. Laws, 182.) So that the block or square in question is that laid off "for the municipal buildings or town halls." The correctness of this translation, as to the words quoted, is questioned, but in the view we take of the case, the difference between the words in the translation and that claimed as their true interpretation is unimportant.

It is not disputed that the municipality of Victoria had and exercised jurisdiction over portions of two, and all of one of the counties of the State as now constituted. But a question is raised as to the successorship to that jurisdiction, that is to say, whether the town of Victoria or the county of Victoria as constituted after the independence of the Republic was established succeeded to the rights and properties of that municipality. But that question we also deem it unnecessary to determine. If left as a question for the courts, it would certainly be one difficult if not impossible to decide. Of necessity it seems to us, that upon a change of the Spanish system of municipal government to that which prevails among English speaking people and substituting both a county and town government where but one existed before, the succession to the rights of the municipal property held for public purposes, became a question for the Legislature to determine. Let us look briefly as to the history of our early legislation as to the town of Victoria. It was first incorporated by an Act of Congress approved December 14, 1837, entitled: "An Act to incorporate the City of San Antonio and other towns therein named." Ten sections of the Act refer alone to the incorporation of San Antonio; but the eleventh section provides: "That the town of Victoria be, and the same is hereby incorporated, and shall have the same power and be governed by the same rules and regulations as are enacted in the Act of incorporation and government of the city of San Antonio, with the exception of having but five aldermen instead of eight." (1 Gam. Laws, 1381.) Section 8 clearly applicable to San Antonio provides: "That the said council in conjunction with the justices of the County Courts are hereby empowered and authorized to sell and alienate such public lots or parcels

of land as may lie within their jurisdiction, and to which there is no legal claimant or title, and also to dispose of such houses or other buildings as may have formerly been the property of the corporation of said city, and the council may sue for and recover all debts, forfeitures, etc., accruing or due to the said corporation, the proceeds of such sales to be appropriated to the erection or repairs of a courthouse, jail and other such public edifices as may be deemed most fit, and to the erection and endowment of a public school." (1 Gam. Laws, 1380.) Whether this was intended to apply to Victoria is a question but it is one not involved in the decision of this case. This Act was amended by that of May 24, 1838, but in no important particular, so far as the question before it is affected. Section 3 of an Act approved January 26, 1839, prohibited the towns of Victoria and Gonzales from in any manner altering any street or public square laid off in the towns. (2 Gam. Laws, 118.) This recognizes the jurisdiction of the towns named over their streets and public squares. This provision seems to have been repealed by an Act of December 17, 1839. By an Act approved February 5, 1840, the towns of Goliad, Victoria and Gonzales were incorporated and all previous laws as to Victoria repealed. Section 2 of that Act prescribed that "the bounds and limits of said town and within which the said corporation shall exercise lawful jurisdiction shall include and comprehend the four leagues of land upon which said town is now situated," etc. Section 9 provided that: "The said council shall have power and authority to sell and alienate any portion of the lands owned by said corporation, and appropriate the proceeds thereof to the erection of a jail, courthouse and clerk's office, and the remainder of said proceeds of said sales shall be appropriated for the purposes of education within said town and for no other purpose." (2 Gam. Laws, 452.) This clearly gives the town jurisdiction over the four leagues without, however, declaring expressly to whom the public property situated within their limits should belong.

It would seem therefore that for the purpose of determining this question and perhaps with a view of settling a controversy that may have arisen by reason of conflicting claims of the town government and the county authorities, the Act of December 10, 1841, was passed. It is entitled, "An Act confirming the title to the town tract of the town of Victoria to the corporation of said town." The first section of the Act declares: "That the title to the four leagues of land heretofore conceded by the State of Coahuila and Texas to citizen Martin De Leon, for the foundation of the town of Guadalupe De Victoria, is hereby ratified and confirmed; and the said four leagues of land, or the part or parts thereof remaining unsold, are hereby acknowledged and declared to be the property of the present corporation of the town of Victoria, and their successors in office, in trust, forever, for the use and benefit of the citizens of said town." (2 Gam. Laws, 687.) The second section confirms the title to the vendees where sale had theretofore been legally made. The third provides: "That the corporation of the town of Victoria is hereby empowered and allowed to do and perform every act or acts, thing, or things, authorized by and under their present law of corporation." The fourth directs that a patent shall issue to the town of Victoria to the four leagues according to

certain field notes therein designated. Very shortly after the passage of the Act a patent was issued in accordance with its provisions.

If the passage of this Act was within the power of the Congress, it placed the title to all of the four leagues which remained unsold, or not appropriated to other purposes, in the town of Victoria in trust for the use and benefit of its citizens. That the Congress had the power we see no good reason to doubt. This appears to be settled by the decisions of our court and of other courts. Bass v. Fontleroy, 11 Texas, 700; San Antonio v. Odin, 15 Texas, 545; The People v. Kerr, 27 N. Y., 188; Whitney v. Inhabitants of Stow, 111 Mass., 368; Stone v. Charlestown, 114 Mass., 214; Montpelier v. East Montpelier, 29 Vt., 12; Commissioners of Laramie County v. Commissioners of Albany County, 92 U. S., 307. In the case last cited Mr. Justice Clifford says: "Institutions of the kind, whether called counties or towns, are the auxiliaries of the State in the important business of municipal rule, and can not have the least pretension to sustain their privileges or their existence upon anything like a contract between them and the Legislature of the State, because there is not and can not be any reciprocity of stipulation, and their objects and duties are utterly incompatible with everything of the nature of compact. Instead of that, the constant practice is to divide large counties and towns, and to consolidate small ones, to meet the wishes of the residents, or to promote the public interests, as understood by those who control the action of the Legislature. Opposition is sometimes manifested, but it is everywhere acknowledged that the Legislature possess the power to divide counties and towns at their pleasure, and to apportion the common property and the common burdens in such manner as to them may seem reasonable and equitable." To the proposition numerous cases are cited—to which many others might be added. (See exhaustive note to Mount Hope Cemetery v. Boston, supra, in 35 Am. St. Rep., 539.) The principle is that insofar as a corporation strictly municipal or quasi-municipal holds property for the purposes of government, it holds merely as a governmental agency, and it is within the power of the Legislature of the State to confer that agency upon some other proper governmental instrumentality.

We conclude, therefore, that the Act of December 10, 1841, placed the title to all the four leagues of land, remaining undisposed of at that date, in the town of Victoria, for the benefit of the citizens of the town—including the public squares and streets. The question then is, Do the facts found by the trial judge show, that the town's title to the square in controversy has been in any manner transferred or lost? It may be gravely doubted whether a town or city, to which property has been conveyed or dedicated specifically for a public purpose, such, for instance, as a public square, has the power to devote it to a different purpose, although public in its nature. Could the town of Victoria after the confirmation of its title by the Act of 1841, appropriate the square to the use of the county in the absence of legislative authority to do so? This question we find it unnecessary to decide, for the reason, that except insofar as the Congress may have given the authority, we find no sufficient evidence of such dedication. Did the laws authorize any dedication? We are of opinion that it had legislative authority

to devote a portion of the square in question as a location for a court-house and jail.  As we have seen, the Act of February 5, 1840, author-ized the town to sell the unsold lands of the four leagues and to ap-propriate the proceeds to the erection of a courthouse, clerk's office and jail, and this power was continued by the confirmatory Act of 1841. Since under the general laws, the building of courthouse, clerk's office and jail are matters within the jurisdiction of the county authori-ties, it is necessarily implied, as we think, that in the erection of such buildings, the town authorities were to act with the concurrence and under the direction of those of the county.  Perhaps it was merely in-tended that they should turn over to the county a sufficiency of the proceeds of the sale, to accomplish the purpose indicated.  Nothing is said in the provision as to a site upon which the structures were to be placed.  But it does not appear that the county owned any land which was appropriate for the purpose.  It seems therefore a reasonable inference that the Congress contemplated that the erection should be upon some one of the public squares of the town and that the town should designate the locality.  This conclusion is supported by the subsequent action of the respective authorities of the town and county. The first jail erected was in 1840 or 1841, and it was placed on this square on the west side.  In 1849 a courthouse was erected on the southeast corner thereof and a clerk's office in the rear of the court-house.  The practical construction of the authorities of the town and county as to their powers and rights is entitled to great weight after this long lapse of time.

We think therefore that the town authorities had the power to dedi-cate a part or parts of the square in controversy for a courthouse, clerk's office and jail and that the ground upon which these structures were so erected was dedicated to the county for those purposes.  We think, however, that this exhausted their power, and that no subsequent at-tempt at dedication should have any effect.

We do not mean to hold that the extent of the dedication was con-fined to the area upon which the respective structures stood; for we think the dedication would include such additional space as was reason-ably necessary and convenient for the purposes for which the buildings were erected.  In determining this, we think the condition of affairs at the time the Act of 1840 was passed and when the buildings were erected, and not what they may have been since that time should govern.

The trial court did not, as we read the findings, hold that the county had had such adverse possession of the square for such time as would bar the action by the statute of limitation, and we think, in view of the dual and permissive occupancy shown by the evidence, that such holding would not have been justified.

Accordingly the judgment is reversed and the cause is remanded.

*Reversed and remanded.*