## THE CITY OF FORT WORTH ET AL. v. T. L. BURNETT ET AL.

No. 7385.   Decided March 18, 1938.

(114 S. W., 2d Series, 220.)

*R. E. Rouer, Geo. C. Kemble, R. B. Young, Jr.,* and *R. M. Rowland,* all of Fort Worth, for appellants.

It appearing on the face of the deed from S. B. Burnett to the City of Fort Worth that it was the intention of the grantor to establish a public park and meeting place, the City of Fort Worth may erect and maintain a public library on a part of said park without violating any of its terms. Lewis v. City of

Fort Worth, 126 Texas 458, 89 S. W. (2d) 975; City of Waco v. McCraw, 127 Texas 268, 93 S. W. (2d) 717; Jones v. Carter, 101 S. W. 514.

*Samuels, Foster, Brown & McGee,* and *Cantey, Hanger & McMahon,* all of Fort Worth, for appellees.

A donor has the absolute right to prescribe the conditions and qualifications of a grant of property to a municipal corporation and the donee, having accepted such donation, is bound by all of the conditions attached thereto, for it can not accept the benefits without being bound by the limitations and conditions. O'Neal v. City of Sherman, 77 Texas 182, 14 S. W. 31; Lamar County v. Clements, 49 Texas 347; City of Hopkinsville v. Jarrett, 156 Ky. 777, 162 S. W. 85.

MR. JUDGE MARTIN, of the Commission of Appeals, delivered the opinion for the Court.

This case is before us on the following certificate:

"In the year 1919, S. B. Burnett, a wealthy citizen of the City of Fort Worth, Texas, executed and delivered to said City a deed using the following language:

" 'Know All Men By These Presents: Having now passed the age of three score and ten, sensible of the advantages it will confer on the community and desirous of contributing something out of my fortune while yet I am alive to the welfare and happiness of the people among whom I dwell and as a visible expression of the love and affection I bore to my two children, Anne and Burk, in their lifetime, I, S. B. Burnett, of the City of Fort Worth, Tarrant County, Texas, do hereby give unto the City of Fort Worth, a Municipal Corporation, duly incorporated under the laws of the State of Texas, for the purpose of creating a park and place of recreation in the very heart of the City.

" 'All those certain lots, tracts or parcels of land lying and being situated within the corporate limits of the City of Fort Worth, Tarrant County, Texas, and more particularly as follows, to-wit:'

"(Here follows the description of nine parcels of land conveyed).

" 'Provided, nevertheless, that this gift is made upon the following conditions and stipulations, the due observance of which is essential to the validity and continuance of this grant.

" 'The said City of Fort Worth in taking under this instrument and in accepting this gift agrees:

" '(1) That said property shall forthwith be set apart, dedicated, treated and maintained by the governing authorities of said City as a public park and breathing-place for the use of the people under proper regulations and control, where the poor, alike with the rich, may assemble as a place of recreation and particularly for relief against the heat of our summers, and as a resting spot for tired mothers with their children. To that end said City of Fort Worth shall never use said property and premises for any other purpose than as a public park and meeting place and any other use thereof shall work a forfeiture of this gift.

" '(2) That said property, nor any part thereof, shall never be commercialized, sold, exchanged or encumbered by said City.

" '(3) That said City shall provide annually a sufficient fund for the maintenance and care of said park and keep same in a trim and tidy condition with such ornament of tree, shrub and flower, as will make it attractive to the eye and conducive to the health, happiness and good morals of the community.

" '(4) That said property will be policed as to shield it from depredation and vandalism and so as to prevent disorder and misbehavior therein and thereabout and thereby make it a safe and proper place for the resort of women and children.

" '(5) That the City shall name and style said park (by which name it shall ever be known) "THE BURNETT MEMORIAL PARK", not for my own vain glory but to perpetuate the memory of my two children, Anne and Burk, now long gone from me, and I, as the donor of the Park, and as the father of said children, shall be permitted and allowed to erect at the entrance of said Park, or within the confines thereof, either or both, a monument designed to express a father's love of his children, with such suitable inscription as I may choose to place thereon.

" '(6) Without binding myself to do so, I reserve the right at any time I may elect, to make such improvements in and about said Park as I may consider suitable and appropriate and to build such structures, houses, monuments and memorials therein as, in my judgment, may serve to enhance its beauty and usefulness to the City and the general public.

" '(7) If, in the meantime, since I acquired said property, taxes and assessments have accrued thereon, same shall be borne by the said City of Fort Worth.

" 'Failure on the part of the said City of Fort Worth, the donee of this gift, to keep and observe any one of the terms or conditions annexed to this gift, shall entitle me or my heirs or assigns, at any time after such omission or breach, to declare the gift forfeit (and no lapse of time shall be considered a

waiver of such terms or conditions) and then and thereupon said premises and property shall revert to me or my heirs or assigns.

"'In witness whereof, I have hereunto subscribed my name, in the City of Fort Worth, Texas, on this 21st day of June, A. D. 1919. (Signed) S. B. Burnett.'

"When such deed was tendered, the City Commissioners accepted same, and the following appears in the Minutes of June 24th, 1919:

"'Deed of gift, tendered by Burk Burnett, of certain tracts of land fully described and set out in said deed, for park purposes, together with conditions and stipulations governing said gift, was unanimously accepted and conditions and stipulations agreed to. Following remarks by Captain Burnett, the donor, and members of the City Commission, a vote of thanks for the splendid gift was extended by the Commission.

"'Proper ordinance accepting said deed of gift was unanimously adopted.'

"The City ordinance referred to has not been located, but its contents were established before the trial court.

"Within two years after the happening of the foregoing events, Mr. Burnett made his will, in which we find the following language:

"'Inasmuch as I have heretofore conveyed to the municipality of Fort Worth certain real property in the very heart of the residential district, in the vicinity of Lamar and Burnett Streets, in said City, to be used as a public park, where the people may assemble and enjoy recreation and respite from the heat and burden of the day, in order that this park may be improved and made comely to the eye, I do hereby will and direct that the sum of Fifty Thousand ($50,000.00) Dollars be set apart out of my estate and used for the foregoing purpose and to that end, I do hereby select my daughter-in-law, Ollie Burnett, and my attorney and friend, Sidney L. Samuels, to act as trustee in the performance of this bequest, and for that purpose, the title to the fund hereby bequeathed is vested in them to be used and applied in the manner and way hereinabove directed, leaving to their discretion the employment of the means best adapted to bring this purpose about.'

"The sum of money thus mentioned and devised was used by the City to make certain improvements in and on the park property, after Mr. Burnett's death, in 1922, and after the will was admitted to probate.

"The lands in question have been used, since the deed was accepted by the City, solely as a public park.

"Within the last few days, the City Council of said City (which is a Home Rule City, operating under a Charter creating a council-manager form of government), acting with the members of the Library Board and Park Board of such City, determined to erect upon said park property a public library, and have planned to remove and destroy the major portion of the improvements placed on the same with Mr. Burnett's devise, in order to make room for the library building.

"When this intention was made known to the public generally, the heirs of Mr. Burnett, joined by the Trustees of the Estate of the deceased Burnett, brought suit in the district court of Tarrant County against the said City, its mayor and councilmen, and the members of the Park and Library Boards of the City, asking for a temporary injunction to restrain the defendants from removing and destroying the improvements above mentioned, and to restrain them from building a public library on said park property, and from thus using the park property in a manner alleged to be a manifest diversion by the defendants.

"On notice, after a hearing before the court, judgment was rendered granting the temporary injunction prayed for, and the defendants have appealed.

"We have, in our opinion delivered February 18th, 1938, held that the trial court committed no error in granting the temporary restraining order. * * *

"A motion for a rehearing has been filed by appellants, and we deem it advisable for a final and correct determination by this court to certify to your Honorable Court the following questions:

"(1) Is the deed from S. B. Burnett to the City of Fort Worth ambiguous, so as to let in parol testimony to explain it and aid in construing it?

"(2) If said deed is not ambiguous, then do its terms forbid, by express words or by clear implication, the erection and maintenance by the City of Fort Worth of a public library on the land embraced in the said Burnett Memorial Park?"

Simply stated, the legal issue here is whether or not the City of Fort Worth is about to breach its contract entered into with S. B. Burnett, by the erection of the aforesaid library building. Stated otherwise, and in more accurate legal phraseology, the question we decide is whether or not the erection of a library building upon the property conveyed constitutes a diversion of the use thereof intended by Burnett, and forbidden by necessary implication from the language appearing in said conveyance in the light of the surrounding circumstances.

1 In deciding this question, we put aside all cases involving the question of the right of a city to erect buildings upon land to which it holds title without any restrictions imposed upon its use. Manifestly such cases furnish no precedent for the determination of the simple question of a threatened breach of a contract, or trust agreement.

We proceed from the assumed hypothesis that a valid trust agreement was made, and that the City of Fort Worth is bound to faithfully carry out its terms as written.

"A dedication must always be construed with reference to the object with which it was made. A different construction is placed on dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted. It is established by the authorities that, where property is appropriated to public use by common law dedication of the owner, the municipality within whose borders the premises are situated takes it, as trustee for the public, for the special uses designated by the dedicator. And if the owner of private property offers to donate it to the public for purposes of a park, and the offer is accepted and the property devoted to such use, the use can not be changed and the property applied to some other use inconsistent with the dedication, except perhaps in the exercise of the right of eminent domain; * * *." 20 R. C. L., Sec. 18, p. 651.

"Whether buildings may be erected in public parks, squares, or commons depends, apparently, on the purpose of the dedication of the land. No servitude inconsistent with the purpose which may reasonably be presumed to have been intended by the dedication may be imposed on such property. If the land is dedicated generally for use as a park, square or common, it is considered by most courts that the erection of buildings thereon is inconsistent with the purpose of the dedication; and the policy of many states has been to add to the common law inviolability of parks express prohibition against encroachment by buildings, highways, steam or street railways. The fact that the use is a public one does not change the rule, for the use must be the one for which the land was dedicated. In applying this rule it has been held that the erection of a public library building on a portion of a tract of land devised to a city on condition that it shall be used forever as a public park is inconsistent with the purpose for which the park was dedicated, and amounts to a diversion." 20 R. C. L., Sec. 20, p. 653.

"It is only where property is dedicated generally without re-striction to the use of the public that the public has a free hand in applying the property to such uses as it may desire. If a dedication is made for a specific or defined purpose, neither the legislature, a municipality, or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be public or private, and whether the dedication is a common-law or a statutory dedication, and this rule is not affected by the fact that the changed use may be advantageous to the public. This can only be done under the right of eminent domain." 18 C. J., Sec. 167, p. 127.

"Illustrations of misuser or diversion. Property dedicated or donated for: A church can not be used for a graveyard; a court house can not be used for a cesspool, a jail, or a public comfort station; a graveyard can not be used for a park; a land-ing can not be obstructed by buildings; a park can not be used for a city fire bell tower; a city hall, a public highway, a public library, or a schoolhouse; a promenade can not be used as a site for a public library; public city buildings can not be used for a county court house; a public market can not be used for a street; a public square can not be used for an approach to a bridge and railroad purposes, a jail, a railway, a street, or waterclosets for use in connection with a court house; a street can not be used for a building, a park, scales, a steam railway, a wall, water tanks, or wharves." 18 C. J., Sec. 170, pp. 128-129.

2    We use these quotations as illustrating broad principles of law, and do not intend by their use to commit this Court to the correctness of any expression therein contained, except such as are directly applicable to this particular record. We have concluded that the instrument before us excludes by the neces-sary implication of its language the use of a substantial portion of the land conveyed in trust, as a site for a library building. This we shall now attempt to demonstrate. It was to be a "breathing place" where the people might assemble "as a place of recreation, particularly for relief against the heat of our summers, and as a resting spot *for tired mothers with their children.*" It was to be kept in a "trim and tidy condition with such ornament of tree and shrub and flower, as will make it attractive to the eye." Fifty thousand dollars was bequeathed by will to be used in furtherance of the purpose to have a "park where the people may assemble and enjoy recreation and respite from the heat and burden of the day," and to make it "comely to the eye." Such amount was so used, but not to erect a library

building. These ornaments so placed there are to now be destroyed, and a portion of its space is to be used as the site of a building. Three score and ten years lay behind the donor of this gift, when the above language was used. The past, sweeping the harp strings of memory, doubtless brought to him the happy laughter of two dead children. In commemoration of these, he set aside a spot in the heart of a throbbing, noisy city "as a resting spot for tired mothers with their children," where "tree and shrub and flower" were to make it "attractive to the eye." In the presence of this language how can we say that this old plainsman intended that lifeless walls of brick and mortar, and the stern silence of a library room, was one of the things he had in mind, as a resting spot for tired mothers with children, "a breathing place," or "place of recreation"? Such an artificial work of man is the antithesis of "tree and shrub and flower," pointedly provided for in the quoted instrument. That he was thinking mainly of nature's creations, not man's, is, we think, too plain for argument. In form his gift was to Fort Worth. In truth it was to weary humanity, to tired mothers, to laughing children, to the "health and happiness" of the inhabitants of Fort Worth, present and future. For these the city has undertaken to administer this trust, and to these it owes the duty of carrying out the dominant intent of the donor, under a strict, not liberal, construction of the quoted instrument.

A multitude of fact cases sustain our view, either directly or by analogy. Some of these are: Clement v. City of Paris, 107 Texas 200, 175 S. W. 672; Lamar County v. Clements, 49 Texas 347; Corporation of Seguin v. Ireland, 58 Texas 183; County of Harris v. Taylor, 58 Texas 690; City of Victoria v. Victoria County, 100 Texas 438, 101 S. W. 190; Codman v. Crocker, 203 Mass. 146, 25 L. R. A. (N. S.) 980, 89 N. E. 177; City of Hopkinsville v. Jarrett et al., 156 Ky. 777, 162 S. W. 85; Anderson v. Thomas, 166 La. 512, 117 So. 573; Collier et al. v. Baker, Commissioner of Highways and Public Works, 160 Tenn. 571, 27 S. W. (2d) 1085; Campbell et al. v. Town of Hamburg, 281 N. Y. Supp. 753; Warren v. Lyons City, 22 Iowa 351; Chicago v. Ward, 169 Ill. 392, 48 N. E. 927, 38 L. R. A. 849; McEntire v. Board of Commissioners of El Paso County, 15 Colo. App. 78, 61 Pac. 237; Melin v. Consolidated School District, 312 Ill. 376, 144 N. E. 13; Perry Public Library Assn. v. Lobsitz, 35 Okla. 576, 130 Pac. 919, 45 L. R. A. (N. S.) 368; Sharp v. City of Guthrie, 145 Pac. 764.

We answer "No" to question No. 1 and "Yes" to question No. 2.

Opinion adopted by the Supreme Court March 18, 1938.