

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

July 10, 1952

Hon. Enos T. Jones
County Attorney
Floyd County
Floydada, Texas

Dear Sir:

Opinion No. V-1474

Re: Legality of selling or
exchanging real property
dedicated to Floyd County
for park purposes.

You have requested an opinion of this office
on the following question:

"Where a tract of land was dedicated
to Floyd County as a park for the use and
benefit of the public as part of the plat
of the townsite of the town of Floydada
(Floyd City), and has been so used as a
park during most of the time since such
dedication, does the city council of the
city of Floydada have authority to sell
or exchange such park site to the First
Methodist Church, Floydada, for the old
church building and grounds in such city,
under the provisions of Article 1017, Re-
vised Civil Statutes of the State of Tex-
as?

"Or, does either the Commissioner's
Court, acting under the authority of Arti-
cle 1577, RCS or the City Council and the
Court acting jointly have such authority?

"And, if you find that the city and/
or county have such authority, is it neces-
sary to have the election provided for in
Article 1019, RCS?"

The case of City of Tyler v. Smith County,
246 S.W.2d 601 (Tex. Sup. 1952), involved a dispute
between Smith County, the City of Tyler, and indivi-
dual property owners, as to their respective rights
in the square in the City of Tyler. The facts showed
that a portion of the square was used for courthouse
purposes, and the remainder used by the public as a
parking lot, marketing place, gathering place for

public meetings, and similar purposes. The court held that the facts showed that the square as a matter of law had been dedicated to public use and cannot now be diverted to private use. We quote the following:

"There seems to be a well defined distinction between courthouse square and public square. For instance, in State v. Travis County, 85 Tex. 435, 21 S.W. 1029, there were many lots and blocks in the City of Austin which belonged to the Republic of Texas when the city site was originally platted. Some of them were reserved for public uses, and an agent of the Republic marked them on the map designating the particular public use to which each was to be devoted. The north half of a certain block was marked 'Courthouse' while the south half was marked 'Jail.' Some time later Travis County erected both a courthouse and a jail on the places indicated. In 1876 this site was abandoned and a courthouse and jail were erected on other lots. The county then rented the old block for use by a lumber yard and later filed suit for rents due. The state intervened, claiming title to the block. This court held that the block having been dedicated to the limited purpose of a courthouse and jail site and that use having been abandoned, the block reverted to the state. But in course of the opinion it was said: 'If the land had been dedicated unqualifiedly to public uses --if, for instance, the words "Public Park" had been written upon the plat instead of the words "Courthouse" and "Jail," we think the public, as well as the purchasers of adjacent lots, would then have acquired rights in the property beyond the power either of the state or county to divert or affect.'

"There can be no doubt that the public accepted the dedication. They used it as a market place, as a parking place, as a place for entertainment and rest, as a place for preaching services and political meetings, as a place to get water for themselves and their stock, and according to undisputed

testimony, they use it today as a 'place of enjoyment and rest', 'to enjoy the roses, shrubbery and various landscaping that has been put there'. According to the weight of authority, this establishes acceptance, and we so hold. 16 Am. Jur., Dedication, Sec. 35, p. 383.

"Under these undisputed facts evidencing dedication and after more than a century of unquestioned general public use following and accepting such dedication, it cannot justly be said that Smith County can now convert the square to private use. Of course, the county may abandon the present square as a site for a courthouse and build a new courthouse wherever it chooses; but if it elects to do that, the entire square must remain impressed with the right of the public to use it for general public purposes, it cannot be diverted to private uses. Lamar Co. v. Clements, 49 Texas 347, supra." (Emphasis added.)

The dedicating deed accompanying your request was executed in 1890. It recited that the dedicator granted and conveyed "unto Floyd County for the use of the public the following dedicated property to wit: All the streets, alleys and parks and Court House Square in the town of Floyd City /now Floydada/ as shown by the above plat. . . To have and hold the above dedicated premises, for the use of the public forever."

Assuming that the conveyance of the park to the city was intended to vest the title in trust for a future incorporation of the townsite and that title became vested in the municipality upon the incorporation, nevertheless the city of Floydada does not have the authority to enter into the proposed agreement. Articles 1017 and 1019 V.C.S. constitute the only authority of the city to dispose of park property. Article 1017 provides, in part:

"The governing body of any incorporated city or town in this State, however incorporated, may sell and convey any land or interest in land owned, held or claimed as public square, park or site for city hall or other municipal building, and abandoned

parts of streets and alleys, together with all improvements on any such property owned by any such city or town. <u>The proceeds of any such sale shall be used only for the acquisition and improvement of property for the same uses as that so sold . . .</u>"

Assuming arguendo that the above statute applies to the property in question, we are nevertheless of the opinion that it does not authorize the exchanging of property for a different use from that which is sold.

Under the facts submitted in your request, the land in question has been dedicated to the public for park purposes and the public has accepted the dedication. We agree with you that under these conditions the land must remain for the use of the public for park purposes. In City of Fort Worth v. Burnett, 131 Tex. 190, 114 S.W. 2d 220 (1938), the court held that a public library could not be built on a tract of land dedicated to the public for park purposes, for this would constitute a diversion of the use intended by the dedication. Under this holding the construction of a building to be used as a civic center would also be a diversion. If such a building could not be placed on the present site, it is clear that the exchange of the property for a site on which such a building is located would not be devoting the proceeds to the acquisition of property "for the same uses as that so sold." Indeed, there is language in City of Tyler v. Smith County, supra, indicating that Article 1017 does not authorize a city to sell park property which has been acquired through dedication, but in view of the holding in City of Fort Worth v. Burnett, supra, we need not decide this particular question because clearly the statute does not authorize an exchange of property for a different use from that sold.

## SUMMARY

Land dedicated to the public for park purposes cannot be diverted for any other purpose. It must remain for the use of the public for park purposes and cannot therefore be sold or exchanged. <u>City of Fort Worth v. Burnett</u>, 131 Tex. 190, 114 S.W.2d

220 (1938); City of Tyler v. Smith County, 246 S.W.2d 601 (Tex. Sup. 1952).

Yours very truly,

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

PRICE DANIEL
Attorney General

By John Reeves
John Reeves
Assistant

JR:am