RAYMOND P. ASH ET AL., APPELLEES, v. CITY OF OMAHA EX REL. LOUIS I. PENTZIEN, APPELLANT, METCALFE CONSTRUCTION COMPANY ET AL., INTERVENERS AND APPELLEES, ISEL I. SOLZMAN, INTERVENER AND APPELLANT.

41 N. W. 2d 386

Filed February 24, 1950. Nos. 32667, 32672.

*Frank C. Heinisch,* for appellant Isel I. Solzman.

*Kennedy, Holland, DeLacy & Svoboda, Edwin Cassem,* and *J. A. C. Kennedy, Jr.,* for appellant Louis I. Pentzien.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellees Metcalfe Construction Co. and Theodore W. Metcalfe.

*G. H. Seig,* for appellees Raymond Ash et al.

*Edward Sklenicka, Edward F. Fogarty, Einar Viren, James M. Paxson,* and *Herbert M. Fitle,* for appellee City of Omaha.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought by the plaintiffs as resident taxpayers of the metropolitan city of Omaha, against the City of Omaha, its mayor and council, the Cassel Realty Company, the Metcalfe Construction Company, corporations, and Theodore W. Metcalfe, in the district court for Douglas County to obtain a judgment finding and declaring the acquisition by the city of a 20-acre tract of land referred to as Krug Park to be ultra vires, illegal, and void.

Previous to the instant trial this case was before the court for the sole purpose of determining whether or not the district court erred in sustaining the general demurrer filed by the city against the third amended petition of the plaintiffs. This court, in Reid v. City of Omaha,

150 Neb. 286, 34 N. W. 2d 375, reversed the judgment and remanded the cause with directions to the district court to overrule the city's general demurrer, holding that the petition stated a cause of action to the effect that the city, in acquiring the Krug Park tract for park and playground purposes, did so in violation of certain provisions of the city charter by which the city is governed.

In 1922, the metropolitan city of Omaha adopted as its home rule charter, Chapter 116, Laws of 1921, in toto, under the provisions of Article XI, section 5, of the Constitution of the State of Nebraska. The original home rule charter and amendments adopted thereto pursuant to constitutional authority appear in Chapter 14, Revised Statutes 1943. In the opinion we will refer to the sections as the same appear in the Revised Statutes 1943. Strictly speaking, such sections of the statute are not applicable to the city of Omaha as such, but as provisions of its home rule charter. We will also make reference to the home rule charter amendment appearing as a note in volume 1, Revised Statutes 1943, p. 490, as such, in addition to the sections of the statute pertinent thereto.

In this appeal the issues are joined by the city's amended answer to the plaintiffs' petition. For the purposes of this appeal, this answer is considered as a denial of the plaintiffs' petition, in that the city failed to abide by the provisions of its home rule charter with respect to the acquisition of the Krug Park tract of land for park and playground purposes.

The answers of the Metcalfe Construction Company and Theodore W. Metcalfe constitute an admission of the allegations of the plaintiffs' third amended petition to the extent that in the acquisition of the Krug Park tract of land for park and playground purposes, the provisions of the city's home rule charter were not followed and, as a consequence, the actions of the mayor and council with respect thereto are illegal and void. These parties filed a petition in intervention, praying title to the Krug Park tract be quieted in Theodore W. Metcalfe, he to

receive a deed conveying the Krug Park tract to him upon the payment by him of $30,000 to the city; and alleging that he held and exercised an option to purchase the Krug Park tract for $30,000, and that he was coerced and intimidated by the acts of the mayor and city council to direct a deed from the Cassel Realty Company to the city of Omaha of the tract of land in question.

One Isel I. Solzman filed a petition in intervention in behalf of himself as a donor and other donors and citizens similarly situated, joining in the city's contention as expressed in its amended answer that the Krug Park tract and the acquisition thereof by the city for park and playground purposes should be found to be legally obtained and that compliance with the provisions of the city charter with reference to the gifts of money to be used for such purpose be sustained.

For convenience we will refer to the appellees Raymond P. Ash et al., as plaintiffs; the metropolitan city of Omaha, a municpial corporation defendant, as the city; the appellees Metcalfe Construction Company and Theodore W. Metcalfe, interveners, as Metcalfes; and the intervener Isel I. Solzman as intervener Solzman.

We will make further reference to the pleadings of the respective parties in the opinion as occasion requires.

On March 10, 1949, the district court rendered a decree the effect of which was to find that the city of Omaha was authorized to retain ownership of the Krug Park tract for park and playground purposes, as a gift, in carrying out the general desires of the donors of the land. The court further found that in the event the city, through its constituted representatives, did not believe it was for the best interests of the city to retain the property for such purposes, it should convey the property to the intervener Metcalfe on the receipt of the sum of $30,000, should Metcalfe be willing, which sum should be returned to the donors. The city was then granted 45 days to take necessary affirmative action on its decision to retain the property for park and recreation purposes,

and should the city decline or fail to take such affirmative action, then the intervener Metcalfe, upon demand, would be entitled to secure a deed from the city on the payment of $30,000.

The city, through its constituted representatives, made report to the district court that by resolution duly passed it favored the use of said property for housing purposes and desired to relinquish the same by deed to the Metcalfe Construction Company.

On April 2, 1949, a supplemental and final decree was rendered by the district court, finding that the city make and execute a deed in favor of the intervener Metcalfe Construction Company to the Krug Park tract to be delivered to the clerk of the district court for delivery to such intervener upon the payment by it of $30,000 to the clerk of the court; quieted title to the land in the Metcalfe Construction Company; and further decreed that the $30,000 paid to the city of Omaha be distributed to the donors in the specific amounts each contributed to make up the purchase price.

Upon the overruling of the motions for new trial filed by the city and the intervener Solzman, intervener Solzman appealed. Notice of appeal was given by the city upon motion made on behalf of the defendant city upon the relation of Louis I. Pentzien, a resident taxpayer of the city and by reason of the refusal and neglect of the city to defend said action by appealing to the Supreme Court of Nebraska, the city by its council having passed a resolution stating its intention not to appeal, which conduct on the part of the city council was not for the best interests of the city. Appeal was perfected by the resident taxpayer Louis I. Pentzien.

The contention of appellants is that the judgment as contained in the supplemental and final decree of the district court is contrary to the evidence and the law.

With reference to the plaintiffs' contention that the motions for new trial filed by the city and intervener Solzman were filed out of time and not within ten days

as required by section 25-1143, R. R. S. 1943, and that notice of appeal was not filed in one month as provided for in section 25-1912, R. R. S. 1943, and therefore this court is without jurisdiction to entertain the appeal, suffice it is to say the final decree was spread on the journal of the district court April 2, 1949, which made the motions for new trial filed April 12, 1949, in time, and the notice of appeal filed May 2, 1949, was filed in one month as provided for in section 25-1912, R. R. S. 1943. The applicable authority is: The period of time provided for by section 25-1912, R. R. S. 1943, within which to perfect an appeal from a judgment or decree rendered in the district court, does not commence to run until judgment or decree is entered on the journal. See Union Central Life Ins. Co. v. Saathoff, 115 Neb. 385, 213 N. W. 342. Plaintiffs' contention is without merit.

The plaintiffs moved for dismissal of the petition in intervention of Solzman for the reason that this intervener did not have any direct, substantial, or immediate interest in the subject matter of the action.

Section 25-328, R. R. S. 1943, provides that any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

"Under the statute the right of a party to intervene in an action is absolute, subject only to the condition that he exhibit a pleading containing allegations which demonstrate a right in the subject matter being litigated." Wightman v. City of Wayne, 146 Neb. 944, 22 N. W. 2d 294.

It is clear from section 25-328, R. R. S. 1943, and the

interpretative decisions that the right to intervene is absolute. See In re Estate of Keller, 101 Neb. 115, 162 N. W. 511.

In Cornhusker Electric Co. v. City of Fairbury, 131 Neb. 888, 270 N. W. 482, it was said: "The petition in intervention must state such facts as, if conceded to be true, will entitle the applicant to some relief or, in other words, will sustain his right to intermeddle in the proceedings and support a decree and judgment in his favor or in favor of the party whom he undertakes to assist."

In order to ascertain whether appellant has a right to intervene or is a mere interloper it becomes necessary to examine his petition and the petition of the plaintiffs. From such examination it appears that this intervener, a resident taxpayer of the city and a donor to the fund, intervenes for himself and the other donors and citizens similarly situated, thereby uniting with the city in an endeavor to procure a judgment sustaining the city's right to accept the donations so made as a gift for the purpose of acquiring the Krug Park tract for a park and playground, contra to the plaintiffs' third amended petition which seeks a judgment declaring acquisition of the tract for such purposes to be null and void.

The question whether or not the petition in intervention of Solzman should be dismissed must be resolved against the plaintiffs.

The plaintiffs and interveners Metcalfe contend the intervener Solzman and the resident taxpayer Pentzien have no appealable interest in this litigation. The reason given is that the public officers engaged in the litigation to protect public rights have carried on the litigation advantageously to the city's best interest for the benefit of the public, and no private person, under such circumstances, is entitled to intervene. See, Smithberger v. Banning, 130 Neb. 354, 265 N. W. 10; Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150. Further, that the city was well within its rights in not appealing from the final decree. The city, in the interlocutory

decree, was entitled to retain the Krug Park tract as a gift. Having by its mayor and council rejected the same as a gift, the city was then in no position to appeal from its own decision.

Section 14-810, R. S. 1943, provides: "If the city shall refuse or neglect to defend any suit at law or in equity brought against it, any resident taxpayer may defend said suit on its behalf at the cost of the city, not including 'attorney's fees'."

Where the city, by its public officers, refuses to appeal and thereby neglects to defend the acceptance of a gift of a tract of land purchased by donations of its citizens and which has been dedicated by its former mayor and city council as a public park and playground thereby carrying out the general purposes of the donors, then in such event a resident taxpayer and intervener such as Solzman is warranted under the afore-cited sections of the statutes to perfect appeal in behalf of the city and defend its rights in such respect.

We proceed to the record which discloses that Krug Park is a tract of land comprising 20 acres in the northwestern part of the city of Omaha. It was formerly used as an amusement park. Thereafter the city zoned it as a class "B" residential district from a class "C" commercial district. See Cassel Realty Co. v. City of Omaha, 144 Neb. 753, 14 N. W. 2d 600.

On February 5, 1945, in a book constituting a report of the parks, recreational, and schools division of the city planning commission approved and published on July 25, 1945, a plate designated 63 shows suggested development of the Krug Park tract for playground and recreational purposes. In this book the Krug Park tract is set forth as an appropriate site to be converted into a city park as a recreational and social center for the public.

On March 1, 1945, Theodore W. Metcalfe had an option from the Cassel Realty Company to purchase the Krug Park tract for a consideration of $30,000. As a contractor and builder he had developed in close proxi-

mity thereto certain housing units and had made plans for the subdivision and development of the Krug Park tract. This proposed subdivision plat was submitted by him to the city planning commission, an official commission of the city, on May 23, 1945. The minutes of the city planning commission disclosed that Theodore W. Metcalfe and a representative of the Cassel Realty Company appeared at a meeting of the commission wherein a discussion ensued with reference to negotiation with a view of acquiring a playground of the north one-third of the Krug Park tract, as between the owners of the tract and the city of Omaha. It is claimed that the minutes of the city planning commission disclose that there was a tentative approval of the submitted plan. The minutes show a discussion had thereon and the possibility of recommending the plan by the commission.

On June 15, 1945, the city planning engineer appeared before the city planning commission and read a document dated June 5, 1945, which was referred by the city council to the city planning commission. This document was a request by the Benson recreational council, a civic organization, for a hearing before the city planning commission with reference to the city acquiring the Krug Park tract for park and recreational purposes. Upon the conclusion of the reading of the document, a representative of such civic organization addressed the city planning commission in favor of the commission recommending to the city council the acquisition of the Krug Park tract for a city park and recreational center. The members of the city planning commission unanimously adopted a motion that the document which pertained to the Krug Park area be returned to the city council with a recommendation that the planning commission regarded the acquisition of that ground for recreational purposes desirable, if the city of Omaha could find a proper method to raise the money with which to acquire the same.

Theodore W. Metcalfe, on September 17, 1945, obtained building permits from the city of Omaha to build two

four-plexes on this Krug Park tract. The following day, September 18, 1945, the mayor introduced before the city council an ordinance to appropriate the Krug Park tract for the purpose of making and establishing an addition to the system of public parks, parkways, and playgrounds. Thereafter Metcalfe contended that the introduction of this ordinance made it impossible for him to carry out the purchase of the Krug Park tract and erect the private housing thereon as planned, and by virtue of the acts of the city council he was unable to acquire the necessary loan to accomplish the building program.

A citizen of Omaha, then president of the city improvement council and prominent in civic affairs, testified that the city planning engineer appealed to her and pointed out the fact that the Krug Park tract was necessary and essential to the city's recreational program, and was needed for such purpose in the area in which it was situated. As a consequence she assumed the leadership of a drive for public subscriptions to raise $30,000 to purchase the Krug Park tract to be given to the city for the purpose of a city park and recreational grounds. The evidence shows that by virtue of her solicitation she acquired from different persons and corporations the amount of $20,000. There remained a balance of $10,000 needed to consummate the purchase. On September 23, 1945, the mayor of the city joined with this citizen in a public appeal appearing in a daily metropolitan newspaper, to acquire the additional amount of $10,000 to complete the purchase, the checks to be made payable to the city of Omaha in care of the newspaper. This newspaper acquiesced in this drive and editorially endorsed its purpose. The contributions were received by the mayor and turned over to the city comptroller who in turn deposited the funds with the city treasurer. On October 30, 1945, the mayor announced at a council meeting that the $30,000 goal had been reached and the city would be able to secure the Krug Park tract for a city park and recreational purposes. The ordinance introduced September 18,

1945, to condemn the tract was then filed and never became effective. A resolution was passed by the city council accepting the funds so contributed for the purpose of acquiring the Krug Park tract. After the resolution was passed, Theodore W. Metcalfe, the owner of the Krug Park tract, by letter to the mayor and city council, offered to direct the Cassel Realty Company to convey the tract to the city of Omaha for the consideration of $30,000. The Cassel Realty Company deeded the tract by direction of Theodore W. Metcalfe to the city of Omaha. On October 31, 1945, a city warrant was issued in payment for the tract.

On November 20, 1945, an ordinance was introduced before the city council, the effect of which was to approve and ratify the purchase of the tract made by the city by the use of donations made by public-spirited citizens for such purpose, and dedicating the tract for a public park and playground.

The plaintiffs contend the mayor of the city solicited funds for the purpose of assisting the city in acquiring the Krug Park tract in violation of the city charter (section 14-224, R. S. 1943), and his acts in such respect constituted the acquisition of such tract by the city a nullity.

Section 14-224, R. S. 1943, provides in part: "The mayor and councilmen and all other officers, agents and employees of the city are prohibited from soliciting or receiving, directly or indirectly, any contribution of money or supplies of whatsoever kind, or any valuable or special privilege at the hands of any city contractor, or his agents, or from any franchised municipal corporation for any purpose whatsoever, * * *."

In Reid v. City of Omaha, *supra*, this court held section 14-224, R. S. 1943, to be a penal statute which condemns the act of the city official as provided therein, and not the purpose of the donors in making donations to the city for a specific purpose.

The mayor did assist in some degree to aid the solicitation of funds for the purpose of helping the city acquire

the Krug Park tract. However, most of the funds so subscribed by persons and corporations having contracts with the city were procured by the citizen heading up the drive for such purpose. The evidence discloses mutuality of interest on the part of the donors. It is apparent that when the contributions were made the donors knew they were making them for a specific purpose. Whatever acts the mayor did with reference to soliciting funds for such purpose would not invalidate the acquisition of the Krug Park tract by the city for the purposes for which it was intended to be procured.

The plaintiffs claim that the acquisition of the Krug Park tract by the city was not in conformity with the amendment to the city charter adopted May 3, 1927, and the sections of the statute pertinent thereto, and as a consequence the action of the mayor and council in such respect was null and void.

The amendment of the city charter above referred to provides in part that the city council may purchase or acquire by the exercise of the powers of eminent domain, in this section granted, private property for parks, parkways, and playgrounds; further provides in part that when property is purchased as provided for in section 14-366, R. S. 1943, for parks or playgrounds, the purchase thereof shall be made by ordinance; then provides for the appointment of three disinterested freeholders who shall take an oath prescribed by law, give notice to the interested property owners and others interested, of hearing, and after notice and hearing, appraise the property and report the appraisal and award to the city council for its action thereon. See section 14-367, R. S. 1943. Provision is then made for assessments on the property especially benefited, augmented by bond issue authorized by the city council. See section 14-368, R. S. 1943.

The afore-cited amendment to the city charter and sections of the statute with respect thereto do not apply to the facts in the instant case. The same refer to the acquisition of private property by the exercise of the power of

eminent domain or purchase by the city for parks or playgrounds by the use of public funds. The instant case involves acceptance by the city of donations made by citizens to procure by purchase the Krug Park tract of land for a specific purpose, and bears no relation to the use of public funds for such purpose as contemplated by the city charter amendment and sections of the statute with reference thereto.

The city charter of the city of Omaha provides by section 14-373, R. S. 1943, that there shall be a board known as the city planning commission, which commission shall acquire or prepare a city plan and shall have power to carry out and maintain said city plan after its adoption by the city council. The city planning commission consists of five members appointed by the council to serve without pay.

Section 14-374, R. S. 1943, provides: "Each city of the metropolitan class acting through its council and upon recommendation of such city planning commission shall have the power to acquire by gift, * * * real estate for establishing, * * * parks, playgrounds, * * *."

Before acceptance of a gift by the city for park purposes recommendation of the city planning commission must be obtained. See Reid v. City of Omaha, *supra.*

It is contended by the plaintiffs that the city council, in accepting donations for the purchase of the Krug Park tract for park and playground purposes, did not obtain the recommendation of the city planning commission as provided for by the city charter heretofore set out in part. Plaintiffs also contend that no public hearings were held before the city planning commission or the city council with reference to the acquisition of the Krug Park tract as a gift to the city for a public park or playground.

That part of the city charter relating to gifts for park purposes and playgrounds does not outline in detail the precise procedure to be followed in either the promotion or acceptance of gifts. Section 14-374, R. S. 1943, does

provide that the city, acting through its council, upon recommendation of the planning commission may acquire property by gift for park purposes. The city charter does not provide for a specific form of recommendation by the city planning board.

The evidence discloses, as previously stated, that on June 15, 1945, the city planning commission recommended to the city council the acquisition of the Krug Park tract for park purposes and that the same was desirable for such purposes provided the city council could find a proper method to raise the money with which to acquire the same. The city council, by motion, adopted the recommendation so made by the city planning commission. We conclude that the recommendation so made by the city planning commission was sufficient to meet the requirements of the city charter with reference to acquiring the Krug Park tract as a gift for park and playground purposes.

The plaintiffs make reference to section 14-407, R. S. 1943, contending that this section requires notice of public hearings, and public hearings to be had before the city planning commission before submitting its final report on the acquisition of a tract of land by gift for park purposes or playgrounds, and that public hearing will not be had before the city council until it has received the report of such commission.

Section 14-407, R. S. 1943, provides as follows: "To exercise the powers conferred by sections 14-401 to 14-418, the city council shall appoint a city planning commission as authorized by section 14-373. Such commission shall acquire or prepare a city plan and shall have power to carry out and maintain said city plan after its adoption by the city council. Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report, and the city council shall not hold its public hearing or take action until it has received the final report of such commission."

The notice required, as appears in section 14-407, R. S.

1943, applies only to the subject matter contained in sections 14-401 to 14-418, which is separate and distinct from the subject matter involved in the instant case. We find no provision of the city charter requiring notice of and public hearings to be had before the city planning commission or the city council covering the acquisition of real estate as a gift to the city for a specific purpose. The plaintiffs' contention to the contrary cannot be sustained. It is noted that sections 14-401 to 14-418 became a part of the city charter subsequent to the provisions of the city charter relating to gifts made to the city for park and playground purposes. Section 14-374, R. S. 1943. It is obvious, if notice as required by section 14-407 was to apply to section 14-374, then section 14-374 would have been included in section 14-407.

The authorities support the proposition that a city such as the metropolitan city of Omaha, under its city charter, may accept a conveyance of land with the fee vested in it for specific purposes such as a public park and playground.

Municipal corporations may take and hold realty by deed of gift in trust for purpose of a public nature, including uses germane to the objects of the corporation. See Cochran v. City of Nome, 10 Alaska 425. See, also, Rowlee v. Durfey, 227 App. Div. 219, 237 N. Y. S. 539.

The fact that a city can only acquire and hold land for public uses does not prevent it from acquiring absolute title to land which it is about to use for public parks and recreation. See United States v. Case Library, 98 F. 512. See, also, Moore v. City of Beaumont, (Tex. Civ. App.) 195 S. W. 2d 968; Vidal v. Girard's Executors, 2 Howard 127, 11 L. Ed. 205; 63 C. J. S., Municipal Corporations, § 953, p. 502, § 957, p. 505, § 960, p. 509.

Subsequent to the city acquiring the fee title to the Krug Park tract of land as a gift for a specific purpose, that is, for a public park and playground, the personnel of the city offices was changed. As appears from the record, the present mayor and city council, by resolution,

rejected the acquisition of the Krug Park tract as a gift for park purposes, and proposed the use of said tract of land for housing purposes. The final judgment entered by the district court is in accordance with the action taken by the mayor and city council in such respect.

The following authorities are applicable where a city seeks to change the specific purpose for which the land was acquired as a gift to the city to another separate and distinct purpose.

By accepting a gift of land for specific purpose, a municipality is bound to use the land for such purposes and no other. McVean v. City of Elkins, 127 W. Va. 225, 32 S. E. 2d 233.

Where dedication is made for a defined purpose, neither legislature, municipality, its successor, nor general public has any power to use property for any other purpose than one designated, whether use be public or private, or whether dedication is a common-law or statutory dedication, notwithstanding that changed use may be advantageous to the public. City of Fort Worth v. Burnett, 131 Tex. 190, 114 S. W. 2d 220.

Property dedicated by donors to a particular public use cannot, at least without the exercise of the right of eminent domain, be appropriated to a use of a different character, in disregard of the rights of the donors. See Codman v. Crocker, 203 Mass. 146, 87 N. E. 177, 25 L. R. A. N. S. 980. See, also, Cummings v. City of St. Louis, 90 Mo. 259, 2 S. W. 130; City of Fort Worth v. Burnett, *supra*.

It is apparent by the authorities cited that where a city acquires the fee title to land by gift for a specific, limited, and defined purpose, and the land is dedicated to that purpose, the city cannot thereafter by its constituted representatives use the land for another or different purpose or convey it back to the original owners under the facts as they exist in the instant case.

We find no sufficient or competent evidence to support the cause of action stated in the interveners Metcalfes'

petition in intervention, that Theodore W. Metcalfe was intimidated, coerced, and forced, as owner of the Krug Park tract, to direct the Cassel Realty Company to convey the same to the city, and the petition in intervention of the Metcalfes is dismissed.

For the reasons given in this opinion, we conclude that the metropolitan city of Omaha legally acquired the fee title to the Krug Park tract of land as a gift for the specific purpose of using the same as a park and playground, and the land so acquired was dedicated to that specific purpose. We reverse the judgment rendered in the final decree and remand the cause to the district court to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.