DAVID F. ANDERSON and ANNE B. ANDERSON,
Plaintiffs,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal Corporation of the State of Delaware,
Defendant.

*New Castle, January 9, 1958.*

*David F. Anderson,* Wilmington, for plaintiffs.

*Stewart Lynch,* City Solicitor, and *James F. Kelleher,* Asst. City Solicitor, Wilmington, for defendant.

MARVEL, Vice Chancellor: Plaintiffs being owners of real estate in Wilmington are City taxpayers. They sue to enjoin defendant from consummating a proposed sale to the Board of Public Education of Wilmington of 6.35 acres of City park land for the sum of $350,000. The Board of Park Commissioners which by statute is responsible for the care and management of all City park lands has expressed its disapproval of such sale and the State Board of Education for various reasons, including doubt as to the propriety of the purchase and sale of park land for a school, has for the time being declined to pass upon the request of the Board of Public Education for approval of said proposed purchase.

Plaintiffs contend that the transaction complained of, if consummated, would be illegal and that they as taxpayers may maintain this action. Defendant concedes that plaintiffs may bring this action, and I agree that plaintiffs' right to sue is well established under facts such as those here alleged, *Fetters v. Mayor and Council of Wilmington,* 31 *Del.Ch.* 338, 73 *A.2d* 644, and *Annotation* in 17 *A.L.R.2d* 475.

The park lands in question, on which the proposed buyer intends to erect a school, are part of a tract conveyed to defendant by Joseph Tatnall in 1886 by deed granting defendant a fee simple title to lands along the northerly side of Brandywine Creek free and clear of restrictions and limitations except as to the pre-existing right of way of the Philadelphia, Wilmington and Baltimore Railroad line through the tract.

Defendant takes the basic position that inasmuch as it holds an unrestricted fee simple title to the lands in question it may sell them under its charter powers authorizing it generally to buy and sell, § 2, *Art.* 1, *Chap.* 1, *Rev.Code* of Wilmington, Delaware, 1942, (§ 2, Chap. 207, Vol. 17, Laws of Delaware). It is further contended by

defendant that inasmuch as the Board of Public Education of Wilmington may condemn sites for school buildings (§ 2303, *Title* 14 *Del.C.*), it is in the interests of the City, its taxpayers and residents to have the contemplated sale consummated. This latter contention, however, obviously cannot be disposed of on the present record.

Plaintiffs contend that the park land in question is held by defendant in trust for park purposes and accordingly may not be converted to a nonpark purpose. Alternatively, plaintiffs argue that if the lands in dispute are not expressly so held in trust by defendant, they have been for many years dedicated to park purposes. Finally, it is contended that in any event defendant by implication has covenanted to maintain such lands for park purposes.

Without objection defendant was temporarily restrained from proceeding with the proposed purchase and sale and after argument on the return of the rule the Court announced it would issue an order preliminarily enjoining the sale in conformity with prayer (c) of the complaint. Thereupon, plaintiffs and defendant filed motions for summary judgment. This is the opinion of the Court on such motions which are based on the pleadings, affidavits and admissions of record. As these papers present no genuine issue as to any material fact summary judgment may be appropriately granted.

On March 13, 1883, the Legislature created and named a Board of Park Commissioners [1] by act which also authorized the Mayor and Council of Wilmington to acquire lands and to receive gifts for the purpose of providing and maintaining " * * * one or more open places or parks for the promotion of the health and recreation of the people of the City of Wilmington and its vicinity * * *." *Chap.* 204, *Vol.* 17, *Laws of Delaware.*

The act went on to provide " * * * Section 3. That as soon as the said commissioners shall have fully organized, they shall have the care and management of all lands the title to and ownership of which

---

1. The act provided that successors to the members of the first board should be appointed by the Resident Judge of New Castle County.

shall, after the passage of this act, become vested in the Mayor and Council of Wilmington to be laid and used as a public park * * * " and that " * * * All lands and property which shall be held, laid out * * * " for park purposes " * * * shall be forever free from state, county and city taxation so long as used for such purpose * * * " and that " * * * No county road, street, railway, sewer, water or gas pipes, telegraph or telephone wires, shall be laid out, opened, extended over, under, above or through any park under the control and care of the said Board of Park Commissioners without their approval [2] and consent."

On April 10, 1885, the Public Parks Act was supplemented by an act [3] authorizing the Mayor and Council of Wilmington upon the recommendation of two thirds of the Board of Park Commissioners to borrow, upon bonds, up to $150,000 " * * * to be used in the purchase or acquisition, in the manner authorized by the act to which this is a supplement, of land for a park,[4] or parks, for the benefit of the citizens of Wilmington and its vicinity."

The Board of Park Commissioners having recommended that park lands be acquired, a special committee of its members reported to Council on May 27, 1886 on its successful efforts to negotiate price reductions on certain proposed purchases, as well as on a conditional gift of William P. Bancroft of 47 acres of land for park purposes including the Tatnall tract on the north side of the Brandywine.

Thereupon, on June 10, 1886 the Mayor gave final approval to a City Ordinance authorizing the issuing of bonds in the amount of $150,000, the proceeds of the sale of which were to be used " * * * for the purchase or acquisition of lands for a public park or parks * * *."

---

2. A fortiori it would seem that the Park Commissioners may effectively disapprove of the building of a school on park land assuming such lands are not held in trust.

3. Chapter 594, *Vol.* 17, *Laws of Delaware.*

4. Compare *Drexler v. Commissioners of Town of Bethany Beach,* infra, in which a town hall purchased with the proceeds of unrestricted bonds was up for sale.

On November 11, 1886 the Tatnall purchase referred to above was consummated, and during the ten years that followed other substantial tracts of land along the Brandywine were donated to the City for park purposes by William P. Bancroft and E. I. duPont de Nemours & Co., and a right of way was granted by William M. Field. As a result of these acquisitions, there came into being North Brandywine Park and Rockford Park, on which were built a zoo, playing fields, walks and drives, the Josephine Smith Memorial Gardens and other park facilities. For more than half a century these areas, including the lands here involved, have been used by the people of Wilmington and its vicinity for health and recreation.

Plaintiffs concede that the Tatnall deed conveyed an unrestricted fee simple title to the Mayor and Council of Wilmington but point out that the statutory plan, which led to the establishment of a Park Board authorized the City to acquire lands " * * * for the purpose of providing and maintaining one or more open places or parks for the promotion of the health and recreation of the people of the City of Wilmington and its vicinity * * * " and provided that the title to lands so acquired was to vest in the City " * * * for the purposes aforesaid * * *." Plaintiffs insist that use of the public trust so created may not be diminished by the proposed sale, that the City holds title to its parks not in a proprietary or private sense but in its governmental capacity; that the City may not use or dispose of these park lands as suits its needs, but that, as a governmental agent of the State, it has the clear duty to maintain them in trust for the continuing benefit of the people of Wilmington and its vicinity.

In my opinion it would serve no useful purpose to analyze the leading cases in other jurisdictions having to do with the acquisition and sale of public park lands, many of which are concerned with restrictions imposed by grantors, because I am satisfied that the City has held the lands here involved in trust for more than fifty years, that the public's right to use these lands for health and recreation may not be limited short of legislative action, and that the fact that the Tatnall deed was without restriction is immaterial, *Dexler v. Commissioners of Town of Bethany Beach*, 15 *Del.Ch.* 214, 135 *A.* 484.

■ The legislative creation of a park plan for Wilmington, including the naming of a Board of Park Commissioners, the actions of the Council and of the Board under a legislative grant of authority to issue bonds for the purchase of park land, and the subsequent growth of the Wilmington park system evidence a public trust. Such trust may not be devoted to a non-trust purpose by the mere title holder to the lands in question. See *Annotation* in 141 *A.L.R.* 1447. Cases cited by defendant are either concerned with municipal ownership of property in a proprietary capacity or situations where public or park land has not been used by the public. They are not in point. Furthermore, were there any doubt as to the meaning and intent of the statutes pertaining to the establishment of a City park system and official action thereunder, the lands here involved have been clearly dedicated to public use not only by mapping, the substantial gifts of others towards expanding and enhancing existing park lands, but by long and continuing public use, *Commonwealth v. Rush,* 14 *Pa.* 186, and *Trustees of Philadelphia Museums v. Trustees of University of Pennsylvania,* 251 *Pa.* 115, 96 *A.* 123.

■ Finally, the fact that the building of the proposed school would mean a continuance of a public use of the land in question does not mean that there would be no breach of trust. It has been generally held that the use of park lands for school purposes is a diversion in violation of the dedication or uses permissible by law for such lands, 39 *Am.Jur., Parks, Squares* and *Playgrounds,* § 31, p. 827, and *Annotations* in 18 *A.L.R.* at page 1256 and 63 *A.L.R.* at page 488.

At variance with the weight of authority is the case of *Kingsville Independent School Dist. v. Crenshaw, Tex.Civ.App.,* 164 *S.W.2d* 49 and 252 *S.W.2d* 1022, holding that a city with the consent of the successor to the grantor might convey park land to a school district for the construction of an urgently needed school rather than submit to condemnation proceedings. The decision, however, was based on a finding that the public had not resorted to the park in question and the case is otherwise distinguishable from the case at bar. Here, there is not only a legislative history behind a park plan but a long and sustained use of the lands in question for park purposes. Moreover, as noted earlier, condemnation is not a factor in the case before me.

Summary judgment is granted to plaintiffs and on notice an order will be entered permanently enjoining defendant from selling and conveying a portion of North Brandywine Park in Wilmington, Delaware to the Board of Public Education in Wilmington pursuant to resolution of such Board dated November 20, 1956 and resolutions of the Council of the Mayor and Council of Wilmington adopted November 27, 1956 and August 29, 1957.