RACHEL K. GALLAGHER ET AL., APPELLEES, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS, IMPLEADED WITH H. F. JACOBBERGER ET AL., APPELLEES, CITIZENS TO SAVE ELMWOOD PARK, INC., A NONPROFIT NEBRASKA CORPORATION, INTERVENER-APPELLEE.

204 N. W. 2d 157

Filed February 9, 1973. No. 38485.

Herbert M. Fitle, Frederick A. Brown, Edward M. Stein, James E. Fellows, Allen L. Morrow, George S. Selders, Jr., Kent N.Whinnery, Verne W. Vance, Thomas F. Dowd, Roger G. Stanway, Richard A. Cerveny, Robert J. Hamer and Cline, Williams, Wright, Johnson & Oldfather, for appellants.

J. A. C. Kennedy, Jr., of Kennedy, Holland, DeLacy & Svoboda, for appellees Gallagher et al.

Ephraim L. Marks of Marks, Claire, Hopkins, Rauth & Garber, for intervener-appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

The following statement of the nature of this case is taken from the brief of one of the appellants, and to

which no exception is taken by the other parties and is adopted for purposes of this opinion.

"This was an action for declaratory and injunctive relief instituted by the plaintiffs, individually and on behalf of all citizens and taxpayers of the City of Omaha, on February 25, 1971, against the City of Omaha, the members of the Omaha City Council, the Mayor of Omaha, and the Board of Regents of the University of Nebraska, praying that a Joint Use Agreement executed by the City of Omaha and the Board of Regents be declared void and the defendants enjoined from implementing said agreement's provisions.

"The plaintiffs' petition alleged that the execution of the Joint Use Agreement was beyond the authority of the City of Omaha and in violation of constitutional and statutory limitations on its power as a municipality.

"The defendant answered by alleging that the Joint Use Agreement was authorized by the Nebraska Interlocal Cooperation Act, by LB 1409 (1969 Legislative Session), and by the constitutional, statutory and inherent power of the City of Omaha and the Board of Regents.

"On April 1, 1971, the lower court granted the Petition for Intervention of the Citizens to Save Elmwood Park, Inc., a non-profit corporation. . . .

"The court below held the Joint Use Agreement illegal, null and void, and entered judgment accordingly for the plaintiffs and intervenor."

We affirm.

The joint use agreement recited the need of the University of Nebraska at Omaha for additional parking for its students and of the City of Omaha for additional parking for Elmwood Park. It described the property involved which consists of a portion of Elmwood Park abutting the University of Nebraska at Omaha on the east and is referred to in the record as comprising approximately 21 acres. The term of the agreement was for 45 years from March 1, 1971, to February 29, 2016.

It provided for the use of the property by the University of Nebraska at Omaha for parking automobiles. The University of Nebraska at Omaha was required to make all the improvements thereon. It was granted exclusive use of the parking facilities from 7 o'clock a.m. to 10 o'clock p.m. Monday through Friday, inclusive, from September 1 through May 31, annually. At all other times the parking facilities could be jointly used. The Board of Regents would collect, receive, and keep all parking fees and could pledge the revenue to finance the issuance of revenue bonds. At the end of the term the Board of Regents had the right to remove all the improvements except drainage facilities and was required to repair any damage caused by such removal. Except for the right of the City to use the parking facilities during the period of nonexclusive use, no consideration was to be paid to the City by the Board of Regents.

It is stipulated that a certain part (a major portion) of the 21 acres was purchased in 1892 with funds derived from a park bond issue, the purpose of which was "the enlarging of Elmwood Park." The deeds conveying this major portion of the property contained no special restrictions, but the property was thereafter used continuously for park purposes. The remainder of the 21-acre tract was acquired in three separate parcels. Two of these deeds contained dedications which stated that the land "shall always be used for park and boulevard purposes."

The major portion of the testimony in this case was devoted to the wisdom or necessity of the joint use agreement and we have read the testimony, but since the only real question before us is the validity of the joint use agreement we will make very little reference to that testimony.

It would seem apparent that a city may use a portion of a park to provide parking facilities for users of the park. It may also be that the city and another govern-

mental entity might, when properly authorized, engage in some joint use of property not incompatible with their respective powers and not inconsistent with any trust impressed upon the property by contract or operation of law. We here, of course, confine ourselves to the specific issues which are raised by the facts in this case.

The first position which the plaintiffs and the intervener take is that the evidence shows the property in question has been dedicated to park use; and that the City holds such property in trust for such purpose for the use of the general public and the City may not divert the property to any other use. The defendants recognize the limitations upon the authority of the City to freely deal with property that has been by the donors dedicated to park use. Both sides cite Ash v. City of Omaha, 152 Neb. 393, 41 N. W. 2d 386, where this court said: "Where dedication is made for a defined purpose, neither legislature, municipality, its successor, nor general public has any power to use property for any other purpose than one designated, whether use be public or private, or whether dedication is a common-law or statutory dedication, notwithstanding that changed use may be advantageous to the public."

The foregoing pronouncement to which we adhere pertains, as indicated by the authorities cited by this court at that time, only to park land dedicated by the grantor or donor for such purposes. City of Fort Worth v. Burnett, 131 Tex. 190, 114 S. W. 2d 220. This case and others establish the principle that the above result follows because the public body has become a trustee of the property for the public. A possible exception to the limitation on diversion of the use to which the property has been dedicated may arise from an exercise of the power of eminent domain. Ash v. City of Omaha, *supra;* City of Fort Worth v. Burnett, *supra.*

Where the park property has been acquired by the municipality especially for park use with funds from the sale of bonds specifically authorized by the electors

for that purpose, the city is still a trustee of the property for such purpose, but in this case may divert the property from such use if it is clearly authorized to do so by the Legislature, at least where the property is no longer needed for park purposes. Wright v. Walcott, 238 Mass. 432, 131 N. E. 291, 18 A. L. R. 1242; Aldrich v. City of New York, 145 N. Y. Supp. 2d 732, 208 Misc. 930; Anderson v. Mayor and Council of Wilmington, 37 Del. Ch. 74, 137 A. 2d 521; Bedford-Nugent Co., Inc. v. Argue, 281 Ky. 827, 137 S. W. 2d 392. See, also, Annotation, Parks—Uses, 18 A. L. R. 1246; Annotation, Parks—Uses, 63 A. L. R. 484; Annotation, Parks—Uses, 144 A. L. R. 486. This court has at least impliedly recognized the trust which arises under such circumstances. See Carlson v. City of Fremont, 180 Neb. 262, 142 N. W. 2d 157, where we held that a municipality may without specific legislative authorization divert property from park use where it was acquired by the municipality with money from the general fund, the only dedication to park use arose out of the act of the municipality itself, and the property was not acquired with funds assessed for the particular purpose.

The Board of Regents takes the position that the proposed use is not a deviation from the dedication and points to the provisions of the lease which provide: "The design and location for all improvements shall be submitted to the City Council of the City of Omaha for its approval in writing before proceeding with the construction of the same and the Public Works Department of the City of Omaha shall have the right to approve the design and location of all entrances and exits from the parking facility to City streets or park roadways." And also the provision: "The parking and park functions for joint use on such real property shall be developed and landscaped in a park atmosphere and setting at Board's expense."

We can decide the question of whether there is a

diversion from park uses only upon the basis of the agreement itself. Although there is some evidence of a general conclusionary nature in the record that Elmwood Park needs more parking for patrons, the record is absent any specific information or data as to the need for additional parking incidental to park use, and as to how the location of the proposed facilities and the exclusive use and control by the Board of Regents during most of the period of the lease would fit into the needs of the park patrons whatever they may be. Accordingly we cannot, even if it were proper for us to do so, make any determination based upon the evidence that some possible joint use would or would not be inconsistent with the trust uses of the property.

Thus the next question which we must answer is whether the joint use agreement was authorized by the provisions of L.B. 1409, Laws 1969, c. 846, p. 3185, which was repealed shortly after the agreement by the parties was made. An examination of the act discloses that it authorizes the Board of Regents to acquire property by negotiation, or if negotiation fails, then by the exercise of the power of eminent domain. It authorizes the City to "Negotiate . . . for the sale" and to "Sell to the Board of Regents . . ." and also to "Exchange any tracts . . . ." It seems obvious the Legislature contemplated a sale and a payment. The "joint use agreement" was not within the terms of the legislative authorization.

The defendants contend that the execution of the agreement was within the constitutional, statutory, and implied powers of both the Board of Regents and the City. The plaintiffs counter with the contention that the City has "no power to enter into contracts which curtail or prohibit an exercise of its legislative or administrative authority" and that the joint use agreement is such a contract. It was upon the determination of this question that the lower court primarily founded its decision. It and the plaintiffs rely upon our opinion

in City of Nebraska City v. Nebraska City Speed & Fair Assn., 107 Neb. 576, 186 N. W. 374. The defendants assert the agreement meets all the strictures of the opinion of this court in that case and that there is no surrender of control. We cannot agree. In that case the park commissioners of the city of Nebraska City entered into a 25-year lease with the defendant authorizing it to construct and maintain and have the exclusive use and control of a race track and buildings to be constructed by the defendant upon park grounds, and also of certain portions of the park grounds surrounding the improvements. The question in the case arose in an action by the city to gain possession of the property before the lease expired. This court held the agreement invalid. We there said: "If a race track, for holding race-meets, is a proper improvement for a public park, it must be under the control of the park commissioners of the city. The city had the right to acquire the lands for a public park. When so acquired it must be used for a public park, and the public must be allowed access thereto, subject only to rules and regulations made by the board of park commissioners and ordinances of the city. Neither the park commissioners nor the city have authority to delegate to, or share with, appellees herein, or any person, the making of rules and regulations governing the control of its public park. Neither the park commissioners nor the city had the power to grant to appellee the exclusive use and control of said race track." A city, in the absence of legislative authorization, has no power to enter into contracts which curtail or prohibit its exercise of legislative or administrative authority. Seidel v. City of Seward, 178 Neb. 345, 133 N. W. 2d 390.

The joint use agreement which we consider here is far more than a "license or concession" which this court in the above case deemed permissible. It does grant to the Board of Regents exclusive use and control of the parking facilities during most of the time during

a 45-year period. It is true the agreement avoids the use of the word control, but it appears that exclusive use, the duty of maintenance, the right to collect and receive the revenue from the facilities, and to pledge said revenue to support a bond issue, all for a 45-year period which is not subject to interruption by the City, constitutes a large measure of control in the ordinary sense of that term and is to that extent at least, as the trial court in its decree held, a diversion of "dedicated park property to a parking lot for" the University and thus inconsistent with park use. Neither L.B. 1409, Laws 1969, c. 846, p. 3185, nor the Interlocal Cooperation Act, §§ 23-2201 to 23-2207, R. R. S. 1943, authorize this.

AFFIRMED.