FRED ABBOUD, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, APPELLANT, V. LAKEVIEW, INC., A NEBRASKA CORPORATION, AND THE CITY OF RALSTON, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEES.

391 N.W.2d 575

Filed August 1, 1986.   No. 85-412.

Dennis E. Martin and Gregory R. Abboud, for appellant.

Steven J. Riekes, for appellee Lakeview, Inc.

S. Caporale, for appellee City of Ralston.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an action for declaratory and injunctive relief brought by the plaintiff-appellant, Fred Abboud, individually and on behalf of all others similarly situated (Abboud), against defendants-appellees, Lakeview, Inc., and the City of Ralston (City). Abboud's petition prays for a permanent injunction blocking the sale of certain real property from the City to Lakeview, a permanent injunction foreclosing the City from ever selling or using the property for anything other than park purposes, and for a finding that a 1967 lease between the City and Lakeview is void.

The defendants demurred to Abboud's second amended petition on the grounds that (1) Abboud lacks standing to sue, (2) the action is not a class action as defined by Neb. Rev. Stat. § 25-319 (Reissue 1985), (3) Abboud has not complied with conditions precedent to bring the suit, (4) the petition does not state a cause of action, and (5) the action is barred by the doctrines of equitable estoppel and laches.

The district court sustained the defendants' demurrer,

finding that Abboud lacked standing to sue and that no trust was created by deed or by the City's action in floating a bond issue to purchase outstanding rights in the property. Abboud appeals from the district court's judgment. We reverse and remand.

We take the relevant facts as undisputed. On May 8, 1937, the Cudahy Packing Company conveyed by warranty deed to the village of Ralston a parcel of land commonly known as the Seymour Lakebed. The grant was subject to the following condition in the deed:

Provided further that the above described premises shall be used by the grantee solely for purposes of a public park and public recreational area, and upon the use thereof by Grantee for any other purpose, the grantor may declare its re-entry upon said premises and upon such re-entry or declaration thereof, the above-described property shall revert to and become the property of grantor.

On October 27, 1944, Cudahy Packing Company sold all its right, title, and interest in Seymour Lakebed to Mr. and Mrs. Fred Eipperle. On April 1, 1947, the voters of the village of Ralston authorized the board of trustees to issue a general obligation bond to purchase outstanding interests in Seymour Lakebed for "park purposes." Subsequently, the City obtained the Eipperles' right, title, and interest by quitclaim deed.

For many years Seymour Lakebed remained just that—an undeveloped, dry lakebed. On July 18, 1967, the City entered into a lease agreement with Lakeview, Inc., a for-profit Nebraska corporation, to occupy and develop the land into a public golf course. The term of the lease was 25 years, with an option to renew. The rent for the first 5 years was $1 annually, plus a percentage of gross income. The lease also contained an "option," or, more accurately, a right of first refusal. If Omaha ever annexed Ralston or the Ralston City Council ever decided to sell, Lakeview had the first right to purchase the land. The option set the price that Lakeview, but apparently not other buyers, would pay for the land—$90,000.

In early to mid 1984 the Ralston City Council determined that it was in the City's best interest to sell the land. The City forwarded to Lakeview a notice of its intention to sell the land

to Lakeview. Lakeview subsequently determined to exercise its option to purchase the land. On June 19, 1984, the council passed ordinance No. 761, declaring Seymour Lakebed surplus and fixing the time, place, and manner of sale. On November 20, 1984, the council passed ordinance No. 765, directing the sale of the land to Lakeview. Pursuant to Neb. Rev. Stat. § 16-202 (Reissue 1983), Abboud filed a petition in remonstrance on December 20, 1984, in opposition to the sale, which was signed by more than 30 percent of Ralston electors who voted in the last regular election. Abboud filed his petition in equity on November 5, 1984, seeking to block the sale to Lakeview and to enjoin permanently the council from ever selling the land for purposes inconsistent with public park use. At its January 8, 1985, meeting, the Ralston City Council confirmed the sale to Lakeview pursuant to ordinance No. 765.

Abboud argues that the district court erred when it found (1) that Abboud had no standing, (2) that the defendants did not violate the law when they failed to disclose a conflict of interest between city officials and Lakeview, and (3) that the property was not held in public trust so that the City was free to sell it.

In reviewing the sustaining of a demurrer, we treat the facts alleged in the petition as undisputed. *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983). We consider only the facts set forth in the petition, and we do not consider extrinsic matters in determining whether a pleading states a cause of action. *Jeffers v. Bishop Clarkson Memorial Hospital*, 222 Neb. 829, 387 N.W.2d 692 (1986). A demurrer admits only such facts as are well pleaded and does not admit mere conclusions of the pleader. *Id.*

We believe that Abboud has standing to bring suit against the City and that his second amended petition sufficiently pleads such standing. Abboud alleges in paragraph 1 of his second amended petition that he is a resident and taxpayer of Ralston. Additionally, his petition states at paragraph 14 that Neb. Rev. Stat. § 18-301.01(2) (Cum. Supp. 1984) confers standing on any resident of Ralston to challenge a contract between the City and an allegedly interested city official. Section 18-301.01(2) clearly confers on Abboud standing to sue, and his petition adequately pleads such standing. The propriety of this suit as a

class action was not discussed by the district court, and we do not address it here.

We turn to the question of whether the 1967 lease between the City and Lakeview is void and unenforceable. Abboud alleges that the lease is void because it violated the conflict of interest statute in effect at the time. The defendants counter that the lease is valid, and even if it is not, Abboud is barred by the 1-year statute of limitations in § 18-301.01(2).

Section 18-301.01(2) provides:

> Except as provided in section 70-624.04, no officer of any city or village may be interested in any contract to which the city or village, or anyone for its benefit, is a party. The existence of such an interest in any contract renders the contract voidable by decree of a court of proper jurisdiction as to any person who entered into the contract or took assignment thereof with actual knowledge of the prohibited conflict. An action to have a contract declared void under this section may be brought by the city or village or by any resident thereof and must be brought within one year after the contract is signed or assigned. . . . The prohibition in this section shall apply only when the officer or his or her parent, spouse, or child (a) has an ownership interest of five per cent or more in any business involved in the contract or (b) will receive a direct pecuniary fee or commission as a result of the contract.

For the purposes of this opinion, these exceptions are appropriately in the nature of affirmative defenses which the defendant must allege and prove.

We do not reach the question of whether the 1967 lease is void, because we agree with the appellees that Abboud is barred by the 1-year statute of limitations. We have frequently held that statutes of limitations do not impair existing substantive rights but merely affect the procedure by which such rights may be enforced; such statutes generally apply to all proceedings commenced after the statute becomes effective. *Cedars Corp. v. Swoboda*, 210 Neb. 180, 313 N.W.2d 276 (1981).

Section 18-301.01 took effect on August 26, 1983. Abboud filed his petition on November 5, 1984. Although § 18-301.01

was amended in 1984, the statute of limitations did not change. Therefore, the 1-year limit applies to Abboud's action to have the lease declared void.

Although this action is barred by the statute, Abboud's request for a permanent injunction preventing the City and Lakeview from exercising the option agreement is not similarly barred. The statute must be interpreted consistent with well-established principles of law. A statute of limitations begins to run when a cause of action accrues or when the right to institute and maintain a suit exists. *T.S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 278 N.W.2d 596 (1979). When a statute of limitations begins to run must be determined from the facts of each case. *Jirka v. Prior*, 196 Neb. 416, 243 N.W.2d 754 (1976).

We have previously noted that the option provision in the lease is more correctly termed a right of first refusal. A right of first refusal is the "[r]ight to have first opportunity to purchase real estate when such becomes available, or right to meet any other offer." Black's Law Dictionary 1191 (5th ed. 1979). Under the terms of the lease, Lakeview did not have the power to purchase the land unless one of two things occurred: Omaha annexed Ralston, or the city council offered the land for sale. Precisely when the city council offered the land for sale to Lakeview and when Lakeview accepted the offer is not clear from the record. What is clear is that the contract for sale was formed in 1984. The city council approved ordinance No. 761, which declared the land surplus, on June 19, 1984. Abboud's cause of action as to the alleged conflict of interest accrued on this date. Abboud filed his petition in equity on November 5, 1984, well within the 1-year period of limitations. His action for a permanent injunction, therefore, is not barred by § 18-301.01(2).

We turn to the question of whether the district court erroneously determined that neither the deed from Cudahy nor the bond issue created a public trust obliging the City to use the land exclusively for public park purposes. To answer this question, we must first classify the nature of the interest the City received in the 1937 deed. The deed granted Seymour Lakebed to the City on the following condition:

> Provided further that the above described premises shall be used by the grantee solely for purposes of a public park and public recreational area, and upon the use thereof by Grantee for any other purpose, the grantor may declare its re-entry upon said premises and upon such re-entry or declaration thereof, the above-described property shall revert to and become the property of grantor.

This language created a fee simple condition subsequent. See C. Moynihan, Introduction to the Law of Real Property, ch. 5, § 6 (1962). In this estate the grantor or its heirs or assigns hold a future interest called a right of reentry, or, more commonly, a power of termination. *Clarke v. Sisters of Society of the Holy Child Jesus*, 82 Neb. 85, 117 N.W. 107 (1908). If the grantee does not adhere to the conditions in the deed, the grantor may exercise its right of reentry in an action to terminate the estate, such as an action in ejectment. See Volkmer, *The Law of Future Interests in Nebraska*, 18 Creighton L. Rev. 259 (1985). As long as this does not occur, the grantee holds a possessory fee simple condition subsequent and the grantor holds a future interest in its right of reentry.

The alienability of a right of reentry is controlled by statute in Nebraska. Neb. Rev. Stat. § 76-107 (Reissue 1981) states that "rights of reentry for breach of condition subsequent shall not be alienable or devisable." Neb. Rev. Stat. § 76-299 (Reissue 1981) specifically provides that "rights of entry or reentry for breach of condition subsequent are . . . not . . . alienable or devisable; and no conveyance . . . made after May 15, 1959, shall operate in favor of the grantee or persons claiming under such grantee." Since both conveyances of the right of reentry were made before May 15, 1959, we do not apply the rule of nonalienability to this future interest.

In October of 1944 Cudahy sold its remaining interest in the land, the right of reentry, to the Eipperles. In April 1947 the Eipperles sold the interest to the City, the original grantee. After the purchase, the City held both the present possessory and future interests, causing the estate to merge and become a fee simple absolute. See C. Moynihan, *supra*, ch. 6, § 1.

An alternate route to the same end involves Neb. Rev. Stat. § 76-2,102 (Reissue 1981), a portion of the Nebraska reverter

act of 1959. The effect of the statute is to limit the duration of certain future interests, including a right of reentry, to 30 years. *Hiddleston v. Nebraska Jewish Education Soc.*, 186 Neb. 786, 186 N.W.2d 904 (1971). Thirty years have passed since 1937, when the estates were created. The restriction in the deed has disappeared, and, absent conditions from sources other than the deed, the City now holds a freely alienable fee simple absolute.

Abboud argues that the language in the deed created a nonalienable public trust because of the words "solely for purposes of a public park and public recreational area." We disagree. A key distinction between language creating a conditioned fee and that creating a public trust involves words of reversion in the former. *Opinion of the Justices*, 369 Mass. 979, 338 N.E.2d 806 (1975). Because intent and res are the basic elements of a valid trust, any residual right in the grantor, such as a right of reentry, is inconsistent with the intent to create a public trust in perpetuity: " '[W]here it clearly appears that the [grantor] intends that the *res* shall revert to himself or his heirs if the charitable purpose is not served, the devise is not a charitable trust, but is construed as some type of absolute or conditioned gift.' " *In re Application of Mareck to Register Title*, 257 Minn. 222, 228, 100 N.W.2d 758, 762 (1960). In *Mareck* the deed actually contained the word "trust," but because of the words of reversion, the court construed the grant as a fee simple condition subsequent. See, also, Restatement (Second) of Trusts § 11, comment *a.* at 32 (1959) ("The owner of property may transfer it . . . to another person and provide that if the latter should fail to perform a specified act his interest should be forfeited. In such a case the interest of the transferee is subject to a condition subsequent and is not held in trust").

Abboud relies on language in *Gallagher v. City of Omaha*, 189 Neb. 598, 204 N.W.2d 157 (1973), to support his position that the deed created a trust. In *Gallagher* the court held invalid a shared use agreement between the University of Nebraska Board of Regents and the City of Omaha for use of parts of Elmwood Park for UNO parking. The court found that the land was dedicated to park use alone in the language of two of

four deeds. The court said nothing about words of reversion, and presumably there were none. The *Gallagher* court held the agreement invalid on the ground that the city lacked statutory power to enter into shared use agreements. The court never questioned what type of estate was created in the deeds; rather, it was clearly construing a public trust conveyance as opposed to a fee simple condition subsequent in this case.

We have discussed the trust dedication by deed theory and have concluded that because of both the common-law doctrine of merger and the Nebraska reverter act, the plaintiff states no ground for relief under this theory. Nevertheless, at the time the village of Ralston acquired title to the land by gift, it obviously acquired something less than the right to absolute, unfettered use. As we have previously discussed, the ownership received was subject to defeat by the exercise of the right to reenter after breach of the condition, i.e., use for purposes other than a public park.

On April 1, 1947, the following appeared on the ballot of the village of Ralston: "Shall the Board of Trustees of the Village of Ralston issue general obligation bonds not in excess of Five Thousand Dollars, to purchase title to that portion of the Lake Bed located in Section Two, Township Fourteen, North Range Twelve, and Fifty feet South thereof for park purposes." The proposition passed, and the village of Ralston acquired from the then owners of the right of reentry that interest, effectively extinguishing the right.

However, by acquiring the limited interest by funds authorized by a bond issue election, did the City limit itself in the future use of the property and its manner of disposition? We think, at least for the purpose of ruling on this demurrer, it did. We said in *Gallagher v. City of Omaha, supra* at 602-03, 204 N.W.2d at 160:

> Where the park property has been acquired by the municipality especially for park use with funds from the sale of bonds specifically authorized by the electors for that purpose, the city is still a trustee of the property for such purpose, but in this case may divert the property from such use if it is clearly authorized to do so by the Legislature, at least where the property is no longer

needed for park purposes. Wright v. Walcott, 238 Mass. 432, 131 N.E. 291, 18 A.L.R. 1242; Aldrich v. City of New York, 145 N.Y. Supp. 2d 732, 208 Misc. 930; Anderson v. Mayor and Council of Wilmington, 37 Del. Ch. 74, 137 A. 2d 521; Bedford-Nugent Co., Inc. v. Argue, 281 Ky. 827, 137 S.W.2d 392. See, also, Annotation, Parks—Uses, 18 A.L.R. 1246; Annotation, Parks—Uses, 63 A.L.R. 484; Annotation, Parks—Uses, 144 A.L.R. 486. This court has at least impliedly recognized the trust which arises under such circumstances. See Carlson v. City of Fremont, 180 Neb. 262, 142 N.W.2d 157, where we held that a municipality may without specific legislative authorization divert property from park use where it was acquired by the municipality with money from the general fund, the only dedication to park use arose out of the act of the municipality itself, and the property was not acquired with funds assessed for the particular purpose.

Whether in all cases this rule is absolute is a question best reserved until a complete hearing in which all relevant facts are before the trial court. The petition on its face states a cause of action as to what we term "the bond issue theory."

We finally pass to the question of whether plaintiff has pled facts sufficient to entitle him to relief under § 16-202. That section provides:

The power to sell and convey any real estate owned by the city, including park land, except real estate used in the operation of public utilities, and except real estate for state armory sites for the use of the State of Nebraska or the Nebraska Armory Board, as expressly provided in section 16-201, shall be exercised by ordinance directing the conveyance of such real estate and the manner and terms thereof. Notice of such sale and the terms thereof shall be published for three consecutive weeks in a legal newspaper published in or of general circulation in such city immediately after the passage and publication of such ordinance; *Provided, if a remonstrance against such sale signed by legal electors thereof equal in number to thirty per cent of the electors of such city voting at the last regular municipal election held therein, be filed with the*

> *governing body of such city within thirty days of the passage and publication of such ordinance, said property shall not then, nor within one year thereafter, be sold.*

(Emphasis supplied.)

The petition alleges that Ralston is a city of the first class and that the ordinance authorizing the sale was passed on November 20, 1984. It further alleges that on or about December 20, 1984, the plaintiff filed petitions of remonstrance pursuant to § 16-202 in opposition to the sale pursuant to ordinance No. 765. The petitions were signed by legal electors of the City of Ralston equal in number in excess of 30 percent of the electors of such city voting at the last regular municipal election held therein. Douglas County election records show that 2,732 residents voted in the November 6, 1984, election. The Douglas County election commissioner verified 835 signatures on the petitions, a number in excess of the 30 percent required by statute. At its January 8, 1985, meeting, the city council confirmed the sale pursuant to ordinance No. 765, despite the petition in remonstrance.

A cause of action under what we term the "remonstrance theory" was clearly stated, and the trial court erred when it did not so find.

The judgment is reversed and the cause remanded to the district court for proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CAPORALE, J., not participating.